STATE OF IOWA v. CHARLES THOMAS, Appellant.

**Murder:** EVIDENCE: SUBMISSION OF ISSUES. Where evidence is as
1 properly admissible under one count of an indictment as the other, no prejudice can arise from a submission of only one count to the jury, although at the time such evidence was offered the prosecution was relying upon both counts for conviction.

**Alibi:** INSTRUCTION. Where there is a defense of alibi the jury
2 should be instructed, that in determining whether there is a reasonable doubt of defendant's guilt, the evidence of alibi must be considered, regardless of whether the defendant has established such defense by a preponderance of the evidence.

**Murder:** DEATH BY POISON: DEGREE OF CRIME: INSTRUCTION. The
3 administration of poison unlawfully and with bad intent constitutes malice aforethought, without proof of a specific intent to kill; and when so administered and death ensues the crime

is murder in the first degree and the crime of manslaughter is not involved.

**Confessions.** The statement of a defendant accused of murder by the administration of poison, that he had given too much of a certain drug and at the same time protesting that it was a mistake and unintentional, is not a confession of guilt and should not be submitted to the jury on that theory.

**Evidence:** ORDER OF INTRODUCTION. The order of the introduction of proof is largely discretionary with the trial court, and its ruling will not be disturbed unless prejudice is shown.

**Same:** REBUTTAL. Evidence tending to negative the theory of the defense is admissible when offered by the State in rebuttal.

**Misconduct:** ARGUMENT. The statement of a prosecuting attorney in argument based wholly upon an inference to be drawn from the evidence, that while there might not be legal evidence that counsel for defendant had bribed a witness but to a moral certainty he had done so, was not such misconduct as to require a reversal.

**Same.** Where the argument of a prosecuting attorney is deemed improper the defendant should make prompt objection thereto that counsel may be caused to desist and the jury properly instructed.

**Same.** Misconduct in argument alone is not sufficient to require the granting of a new trial; it must also appear to have been so prejudicial as to deprive the complaining party of a fair hearing of his case by the jury.

**Misconduct of jurors.** Reference by jurors during their deliberations to the fact that defendant was not a witness in his own behalf is not such misconduct as will require a reversal. The statute prohibiting such reference in argument has no application to members of the jury.

**Misconduct of bystanders.** The demonstrations of bystanders indicating disapproval of the objections and argument of defendant's counsel are not ground for a new trial, where there is no showing that the jury were subjected to popular pressure or influence.

**Murder in first degree:** EVIDENCE. The evidence on a prosecution for murder by the administration of poison is held to support a verdict of conviction.

*Appeal from Polk District Court.*— Hon. A. H. McVey, Judge.

WEDNESDAY, NOVEMBER 21, 1906.

REHEARING DENIED THURSDAY, OCTOBER 24, 1907.

DEFENDANT was convicted of murder in the first degree, committed by the administration of poison to one Mabel Scofield, resulting in her death, and sentenced to imprisonment in the penitentiary for life, and from this sentence he appeals.— *Affirmed.*

*McHenry, Mulvaney & Jones,* for appellant.

*Charles W. Mullan,* Attorney-General, *Lawrence De Graff,* Assistant Attorney-General, and *Jesse A. Miller,* County Attorney, for the State.

McCLAIN, C. J.— On the 22d day of October, 1899, the body of Mabel Scofield was found in the Des Moines river, and in December, 1904, the grand jury of Polk county indicted defendant for the murder of Mabel Scofield by the administration of poison. The evidence tended to show that Mabel Scofield and Maggie Hammond had come to Des Moines six or seven weeks before the death of the former, and had gone to live with the parents of the defendant, to whom Maggie Hammond was related, and that the two girls were employed in a dressmaking establishment. On the morning of October 21, 1899, which was Saturday, Mabel Scofield had accompanied her mother, with whom she had just previously returned from a short trip to Waterloo, to the train, on which her mother was to proceed to her home. After her mother's departure from the Union Station on the train, Mabel Scofield started up West Fifth street at the east end of the station. Where she subsequently went, and what occurred to her between this time and three o'clock of the afternoon of the next day, when her body was found in the river, is the subject of controversy among the witnesses

whose testimony is set out in this record. It does not appear that she went to her place of work, which was on West Sixth street, and which she could have reached in a very direct way by going up Sixth street from the west end of the station; nor that she was at her place of work during the day. Witnesses for the prosecution testify that she was seen returning to the Thomas home on Woodland avenue near West Tenth street, and that she was seen at the Thomas home within a short time after she left the Union Station. There is no evidence that she was seen about the Thomas home after that, and the theory of the prosecution is that she died not later than half past ten o'clock from the effect of chloral hydrate or chloroform, or the two poisons combined, administered to her by defendant after her return to the Thomas home that morning. On the other hand, two witnesses for defendant testify to having seen her late in the afternoon of that day on the streets, and the theory of the defense is that she committed suicide by drowning in the river near where her body was found, some time between Saturday afternoon and three o'clock on Sunday afternoon. There is also some evidence for defendant tending to show that he was not at his parent's home on Saturday morning during the hours when the crime was committed as charged. Such details of the evidence as it is necessary to refer to in passing upon the errors assigned will be stated in the course of the opinion.

I. The indictment charging murder in the first degree is in two counts, in the first of which it is alleged that defendant caused the death of Mabel Scofield by administering and causing to be taken by her "a deadly amount of a certain deadly poison known as the hydrate of chloral, and certain poisons to the grand jurors unknown"; and the second count charged the commission of the crime by making an assault upon and killing Mabel Scofield "by some means, drugs, poisons, instruments, and weapons," to the grand jury

1. MURDER: evidence: submission of issues.

unknown.   At the conclusion of the evidence the court with-
drew the second count from the consideration of the jury, and
submitted the case solely upon the first count, and in this it
is claimed there was error, inasmuch as some of the evidence
indicated that the death was caused by the administration of
chloroform, and that this evidence was not withdrawn from
the consideration of the jury, so that the jury were allowed,
in passing upon the charge under the first count of the indict-
ment, to consider evidence which it is claimed was admissible
only under the second count.   But this contention is entirely
without merit.   Chloroform is not referred to in either count.
Evidence that the death was caused by chloroform would be
admissible only under the allegation charging the administra-
tion of some poison to the grand jurors unknown.   The first
count charges the administration of " hydrate of chloral, and
certain poisons to the grand jurors unknown," while the
second count charges that death was caused " by some means,
drugs, poisons, instruments, and weapons, to the grand jurors
unknown."   Clearly, therefore, proof of death by the admin-
istration of chloroform was as pertinent under the one count
as under the other, and there could have been no prejudicial
error in submitting only the first count to the consideration
of the jury, although, at the time when the evidence tending
to show death by the administration of chloroform was intro-
duced, the prosecution was depending upon both counts for a
conviction.   Considering the first count alone, there was no
variance between the allegations and the proof in this re-
spect.

   II.   With reference to the evidence tending to show an
abili, the court instructed the jury that:  " The defendant is
not required to prove that defense beyond a reasonable doubt,
but, to entitle him to an acquittal, it is suffi-
cient if the evidence upon that point raises a
reasonable doubt of the defendant's presence at the time and
place of the commission of the crime charged.   The burden
is upon the defendant to prove this defense for himself by

2. ALIBI:
   instruction.

a preponderance of evidence; that is, by the greater and superior evidence." It is claimed that this instruction is erroneous because it does not properly present the rule adopted by this court, and which is in some respects peculiar to this State, that, while the defense of alibi must be made out for defendant by a preponderance of the evidence relating thereto, nevertheless the defendant is entitled to acquittal, if all the evidence, including that relating to alibi, leaves in the minds of the jury a reasonable doubt as to defendant's guilt of the crime charged. *State v. Hogan,* 115 Iowa, 455; *State v. McGarry,* 111 Iowa, 709; *State v. Hathaway,* 100 Iowa, 225; *State v. Maher,* 74 Iowa, 77.

The only question, as we think, is whether, in the instruction quoted, the jury was directed to take into account the evidence relating to alibi in determining whether they were satisfied beyond a reasonable doubt on all the evidence as to defendant's guilt, and we are satisfied that the instruction plainly conveys this idea. The jury was told to acquit if the evidence as to alibi " raises a reasonable doubt of the defendant's presence at the time and place of the commission of the crime charged." Certainly it must have been understood from this instruction that, in determining whether there was a reasonable doubt of defendant's guilt, the evidence as to alibi should be considered regardless of whether defendant established the defense of alibi by a preponderance of the evidence. The instruction is quite similar in this respect to one which was held not prejudicial to the defendant in *State v. Worthen,* 124 Iowa, 408. It is said, in the *Worthen* case, that the instruction given was more favorable to the defendant than it should have been, and perhaps the same thing is true in this case; but, at any rate, there was clearly no error prejudicial to defendant.

III. With reference to the degree of the crime committed, the jury was instructed as follows: " But if you find that the defendant, Charles Thomas, unlawfully, with bad intention, caused poison to be taken by Mabel Scofield

which caused the death of the said Mabel Scofield, you
should find the defendant, Charles Thomas,
guilty of murder in the first degree; but, if
you fail to so find, your verdict should be
not guilty." An objection made to this charge is that a
homicide committed by the unlawful administration of poison
with bad intention is not necessarily murder, but that it may
be manslaughter, depending upon the nature of the intent
with which the poison was administered. The question is
not as to the degree of murder, for it is provided, in Code,
section 4728, that: "All murder which is perpetrated by
means of poison . . . is murder in the first degree."
But the question is whether the crime might not be man-
slaughter. The abstract inquiry to which our attention is
thus directed is this: May there be a homicide committed
by the unlawful administration of poison under such cir-
cumstances as to render the perpetrator thereof guilty of a
crime which does not constitute the crime of murder? Or,
in other words, does the fact of the unlawful and wrongful
administration of poison, causing death, in itself show that
malice aforethought which characterizes murder as distinct
from manslaughter? There can be but one answer to this
question under the decisions of this court, and it is not nec-
essary to go further in discussing the question for the pres-
ent case. In *State v. Robinson,* 126 Iowa, 69, it was held
that an indictment for murder by means of a felonious ad-
ministration of poison need not specifically allege an intent
to kill. In *State v. Wells,* 61 Iowa, 629, it was held that
it was sufficient to charge that the poison was unlawfully
administered, and not given with a good intention, and the
court says: " The administration of the poison unlawfully,
with a bad motive or intent, under the statute constitutes
murder, if death ensues. . . . It is immaterial whether
or not there is a specific intent to kill. It is fundamental
that every one is presumed to intend the necessary conse-
quences of an act deliberately done by him."

*3. MURDER: death by poison: degree of crime: instruction.*

The result of our cases, as we understand them, is to hold that the administration of poison unlawfully and with bad intent constitutes malice aforethought without specific intent to kill, just as a felonious act of inflicting a grievous bodily injury supplies the malice aforethought necessary to constitute murder, although there is no specific intent to kill proven in connection with the infliction of such injury. Malice aforethought does not necessarily require for its existence an intent to take life. Death resulting from the attempt to commit any felony, even though its tendency in itself is not to cause death, will supply the malice aforethought necessary to constitute murder. 1 McClain's Criminal Law, sections 322, 325, 326. Thus, in *State v. Moore,* 25 Iowa, 128, it was held that death caused in the unlawful attempt to procure an abortion necessarily constituted murder, irrespective of whether there was any intent to take life, or whether the crime of abortion was a felony. And it is said that " malice may be implied from unlawful acts dangerous to life committed without lawful justification." Certainly the unlawful administration of poison is an act also dangerous to life, and we see no reason why it does not necessarily amount in law to the malice aforethought which will characterize death resulting therefrom as murder. The general conclusion that any criminal homicide caused by the wrongful administration of poison is murder in the first degree is supported by numerous cases decided by this court. See *State v. Bertoch,* 112 Iowa, 195; *State v. Burns,* 124 Iowa, 207; *State v. Van Tassel,* 103 Iowa, 6. There was no error in the instructions given.

IV. One Taylor, who testified that he was a practicing physician, although not admitted to practice under the laws of the State, and that he combined his practice of medicine 4. CONFESSIONS. with the occupation of painting and paper hanging, testified that, on the Saturday morning on which the crime is charged to have been committed, defendant left a call at his office, in response to which he

went to the Thomas home on Woodland avenue, about half past ten, and was met at the door by the defendant. As abstracted in the appellant's record, he testified: "I asked him what was the matter, and he said I was too late; that he had given some knock-out drops and had killed a girl, and wanted me to pump the stomach out, or something to that effect; and said it was Mabel Scofield. I saw him afterwards at my office on Locust street. He wanted to know why in hell I didn't come when he left the call for me, and said he had given too much knock-out drops; that he didn't intend to; and that it was a mistake." It may be remarked in passing that, as to this very material testimony, there was some corroboration in the testimony of the daughter of Taylor as to defendant's having left the call on Saturday morning to come to the Thomas home, and as to his referring to poison in his subsequent conversation with Taylor. On the theory that the statement of defendant to which this witness testified constituted a confession, counsel for appellant claim that the court should have instructed the jury in accordance with the provisions of Code, section 5491, that: "The confession of the defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that the offense was committed." No such instruction was asked by the defendant; but, irrespective of that, we think there was no error in failing to instruct on the theory that the statement was a confession. Defendant's statement was not that he had unlawfully or wrongfully or with bad motive administered poison. The statement itself negatives any unlawful intent, and what is said in regard to the act cannot be separated from the accompanying declaration as to intent so as to make the admission of the act itself a confession of crime. *State v. Abrams,* 131 Iowa, 479. It was not therefore error on the part of the court to fail to instruct with reference to the statement as constituting a confession. Indeed, it would have been error to treat the statement as a confession and instruct on this theory.

V. As tending to establish an alibi, witnesses were called to testify, in behalf of defendant, that during the Saturday forenoon when, as it is claimed, the crime was committed by the defendant at the Thomas home, defendant was driving a hack at a funeral. In rebuttal two witnesses were called for the State who testified to a conversation with defendant on the following Sunday morning in which he declared that Mabel Scofield had committed suicide. It is to be noticed that this conversation, if it occurred as stated by the witnesses, was prior to the discovery of the body of Mabel Scofield in the river. Counsel for defendant objected at the time to the introduction of the testimony of these witnesses, on the ground that it was not properly given in rebuttal, and they now contend that the overruling of the objection was error. It is well settled, however, that the order of the introduction of evidence is a matter resting largely in the discretion of the trial court, and that the exercise of this discretion will not be interfered with on appeal, unless it is made to appear that the ruling was not in the furtherance of justice, and was prejudicial. *Yeager v. Spirit Lake,* 115 Iowa, 593; *State v. Yetzer,* 97 Iowa, 423; *State v. Gadbois,* 89 Iowa, 25; *State v. Bruce,* 48 Iowa, 530; *Hubbell v. Ream,* 31 Iowa, 289. There is not the slightest showing of prejudice to defendant in allowing this evidence to be introduced in rebuttal. No request was made for time within which to procure testimony to meet that of the witnesses thus examined, and, as a matter of fact, it appears from the record that subsequently the defendant did offer the testimony of several witnesses in surrebuttal with reference to other matters testified to in the State's rebuttal. It does not appear in the record that the counsel for the State was aware of this evidence in time to have used it in making out their case in chief, and, as suggested by counsel for defendant, concealed it until near the close of the case.

Moreover, it seems to us that the evidence was properly

5. EVIDENCE: order of introduction.

introduced in rebuttal, for it tended to negative the theory of the defense. Certainly a false statement by defendant

6. SAME:          with reference to the fact of suicide, that is,
   rebuttal.      a statement that suicide was the cause of

death, made at a time before there was any knowledge on the part of any other person of facts indicating suicide, was admissible as tending to negative the explanation of suicide on which the defendant was relying.

VI. Misconduct of counsel for the prosecution in the closing argument to the jury is strongly insisted upon as a ground for reversal. Briefly, the misconduct charged

7. MISCONDUCT:   was in going outside of the record in two re-
   argument.     spects, and in each case, as claimed, in a

manner highly prejudicial to the defendant. The first of these was in imputing bribery to counsel for defendant. It appeared from the evidence that one Noble, a witness for the defendant, who had testified to driving Mabel Scofield about the streets of Des Moines on the afternoon of the Saturday on the morning of which she was murdered, as claimed by the prosecution, and who at the time he was a witness was an inmate of the county poorhouse, had gone from the office of defendant's attorneys to a place of business where he was acquainted, and, jingling three silver dollars in his hand, had stated that he was to be a witness in the Mabel Scofield case. Counsel for the prosecution in argument made the most of this incident, jingling several silver coins in his hand, and referring to one of the counsel for defendant in such language as to indicate that, while there might not be legal evidence that he had bribed the witness, to a moral certainty he had done so.

Without discussing from a professional standpoint the propriety or advisability of this kind of argument, we are only concerned now in determining whether there was such misconduct as to require a new trial. It is not claimed that the court was remiss in giving to the defendant any protection to which he was entitled, so far as redress could be given

or protection afforded, by reprimanding counsel or cautioning the jury as to the effect to be given by them to the argument. The sole contention is that irremediable error was committed for which a reversal must be granted. The argument of counsel is not open to the objection that it refers to matters outside of the record. The facts as to what Noble did and said were in the record, and counsel for the prosecution did not pretend that there was any evidence of bribery of the witness by defendant's counsel, nor that he had any information as to such bribery not contained in the record itself. He simply made a charge based upon inference, and which on its face showed that it had no other basis. It is not necessary to cite authorities to support our conclusion that this did not constitute such misconduct as to require a reversal.

The other misconduct of counsel complained of was in relating what is referred to in the record as his "Arizona story." He detailed at some length an incident of his own experience in Arizona, involving, briefly stated, the fact of his seeing a single drop of some liquor surreptitiously put into a glass of liquor and given to a man, who almost instantly dropped dead and was robbed and then placed in a sitting position in a chair with a newspaper before him, as though reading. It is claimed that counsel accompanied his description of the act by seating himself in a chair and imitating the position and attitude of the person referred to in his story. The objection made to this argument is that it brought to the attention of the jury facts not in the record, and bearing on the case, in this: First, that it advised the jury that some such poison as chloral hydrate might produce almost instant death; and, second, that it showed that a person dying from such poison might be afterwards placed in a sitting position. The pertinency of the second of these suggestions is that witnesses testified to seeing a buggy containing two men with a young woman sitting on the seat between them driving in the direction of the river early on

the Sunday morning before Mabel Scofield's body was dis-
covered, and that, when discovered, the limbs of her body
were drawn up as they would be in a sitting position.

In the first place, it is to be noticed that no objection
was made to the part of counsel's argument in which he re-
lated the Arizona story until after the conclusion of the argu-
ment, when one of the counsel for defendant
proceeded to dictate into the record objections
that it was improper and inflammatory; but he did not ask
any action of the court save as he raised the point as a ground
for new trial in his motion.  If he thought the argument im-
proper, he should have made prompt objection, so that op-
posing counsel might have been caused to desist, or asked
some direction to the jury with a view of counteracting the
effect of the improper argument, if possible.  No error of
the court is pointed out in this connection, unless it was er-
ror under the circumstances to overrule the motion for new
trial.

8. SAME:

In the second place, we have to say that mere miscon-
duct of counsel is not enough, alone, to require the granting
of a new trial, unless it appears to have been so prejudicial
as to deprive the complaining party of a fair
hearing of his case by the jury on the evi-
dence.  If the jurors were not influenced by the argument,
then there is no warrant for interference.  The case is not
one where counsel has attempted to bring to the attention
of the jury facts relating to the case itself, which do not
appear from the testimony of witnesses.  There may well
be cases where we could say that the necessary result of sug-
gesting facts not in the record was such as to preclude a fair
consideration of the evidence on which alone the case was to
be tried.  But this is not such a case.  The argument went
beyond the fair limit of illustration, and is to be condemned.
But the trial court had for consideration affidavits of jurors
that they did not consider anything but the evidence intro-
duced and the instructions given by the court, and we cannot

9. SAME:

hold as matter of law that the improper argument was preju-
dicial. There was nothing in the argument to suggest that
the drop of poison put into the glass of liquor given to the
man referred to in the illustration was chloral hydrate or
chloroform, and no juror could be so ignorant as not to know
that there are poisons which, though administered in small
portions, produce almost instant death. There was no evi-
dence whatever as to whether or not Mabel Scofield died
while sitting in a chair, or was placed in that position after
death and before *rigor mortis* had set in. That question
was wholly immaterial. The jurors could have learned
from the argument no assumed or declared fact which, if
believed to be true, would have guided them in finding a ver-
dict.

In general, questions relating to the effect of alleged
misconduct can be passed on by the trial judge much more
satisfactorily than by an appellate court. The judge who
hears the case is able to determine much more accurately
whether, in view of all the surroundings, the misconduct
was prejudicial, than we can. The trial judge expressed his
conclusions in connection with the overruling of this ground
in the motion, and held that there was not such showing as
to require the granting of a new trial, and we are not in-
clined to interfere with the result. As supporting this con-
clusion, see *State v. Row*, 81 Iowa, 138; *State v. McIntire*,
89 Iowa, 139; *Hammond v. Sioux City & P. R. Co.*, 49
Iowa, 450; *State v. Millmeier*, 102 Iowa, 692. We find
nothing in the alleged misconduct of counsel requiring the
reversal of the conviction.

VII. Misconduct of the jury after retiring for de-
liberation is relied upon as a ground for reversal. The mis-
conduct complained of consisted in some reference made by
10. MISCONDUCT       one or two members of the jury to the fact
OF JURORS.           that defendant had not been a witness in his
own behalf. The statute (Code, section 5484) provides
that: " Should a defendant not elect to become a witness,

that fact shall not have any weight against him on the trial, nor shall the attorney or attorneys for the State during the trial refer to the fact that the defendant did not testify in his own behalf; and should they do so, such attorney or attorneys will be guilty of a misdemeanor, and defendant shall for that cause alone be entitled to a new trial." The statute itself specifies the consequence to follow a reference to the fact during the trial. It does not purport to prohibit a reference to the fact by jurors in consultation, nor does it prescribe any remedy for such reference. We should certainly not be justified in extending the statute in the manner suggested by counsel. It would be obviously unwise to make the conclusiveness of the conviction dependent upon what the jurors might say to each other in consultation, unless it appeared that their verdict was the result of some manifest impropriety of conduct. If the showing as to the conduct of the jurors was admissible at all, prejudice was negatived by further showing on behalf of the State that the jury did not take into account the fact referred to in reaching their conclusion.

VIII. Complaint is made that the court did not instruct the jury with reference to certain alleged demonstrations by way of hissing and other indications of disapproval of the objections and arguments made by defendant's counsel. This ground of reversal is largely amplified in appellant's argument, but the complaint is rather that the defendant did not have a fair trial than that the court committed any error. The trial was somewhat sensational in its nature, was protracted, extending through twenty-three days, and was held in a public auditorium to which, by consent of counsel on both sides, it was adjourned by the court because of the insecurity of the temporary quarters in which court was being held during the construction of a new county courthouse. It appears that from eight hundred to one thousand people were constantly in attendance. Certainly there was no impro-

11. MISCONDUCT OF BY-STANDERS.

priety in giving the defendant a public trial, and in adjourning court to more secure and commodious quarters for that purpose. Had the public been excluded, the defendant might well have complained. The showing as to hissing and other demonstrations is quite conflicting, but it does not appear, save in argument of counsel, that the court failed in any respect to discharge his duty with reference to securing a fair and impartial trial for the defendant; and we are bound to give to his conclusions as to what took place very considerable weight. His finding of fact in this respect, in ruling on this ground of the motion for a new trial, satisfies us that there was no such demonstration as to indicate that the jury were in any way subjected to popular pressure or undue influence. While any sort of demonstration in a court of justice is to be deprecated and should be repressed by the trial judge with the greatest vigilance and firmness, there is no such showing here as to lead us to believe that the judge who tried the case did not fully discharge his duty in this respect, and it is sufficient to say that we find no ground for setting aside the conviction on account of what took place at the trial, nor the conduct of the trial judge with reference thereto.

IX.    Counsel argue at considerable length the insufficiency of the evidence to support the verdict. It would be wholly unprofitable to set out the evidence in detail. The opening statement as to what the evidence tended to show, and the other items of evidence which have been referred to in discussing the errors of law relied upon, indicate that beyond question there was sufficient evidence to support the verdict. If the testimony of the witnesses for the prosecution is to be believed, the jury were fully warranted in reaching a verdict of guilt. The credibility of these witnesses was for the jury. As to some of them, there was evidence to impeach their credibility. But, on the other hand, the testimony of the witnesses for defendant who testified to

12. MURDER IN FIRST DEGREE: evidence.

facts necessarily inconsistent with defendant's guilt was also open to suspicion, either on account of direct impeachment or the nature of the testimony given by them, and its inconsistency with the other testimony in the case. We could not with propriety, even if we desired to do so, enter upon an elaborate discussion of the conflict of testimony of these particular witnesses and indicate in what respects we would believe one witness rather than another. Our full duty is discharged, and justice is administered in accordance with our system of law, which grants to the defendant the right to a jury trial and the right to have every doubt resolved in his favor, when we affirm the judgment of conviction based on the verdict of a jury after finding that he has had a fair trial to an impartial jury, that the verdict of the jury has support in the evidence, and that no error of law to his prejudice has been committed during the trial.

We are fully satisfied that the defendant has had a fair trial, that there is ample evidence to support the verdict, and that no prejudicial error was committed by the trial court, and the conviction is therefore *affirmed*.