STATE OF IOWA, appellee, v. JAMES ELWOOD HARLESS, appellant.

No. 49190.

(Reported in 86 N.W.2d 210)

NOVEMBER 12, 1957.
REHEARING DENIED JANUARY 17, 1958.

Lawyer, Lawyer & Ray and Don Hise, all of Des Moines, and Joseph L. Phelan, of Fort Madison, for appellant.

Norman A. Erbe, Attorney General, Don C. Swanson, Hugh V. Faulkner, Assistant Attorneys General, and R. N. Johnson, County Attorney, of Fort Madison, for appellee.

GARFIELD, J.—A jury found defendant guilty of the crime of attempting to break and enter in violation of section 708.10, Code, 1954, and of being a habitual criminal as defined by section 747.5. From judgment thereon defendant has appealed.

I. Appellant first contends the evidence is insufficient to sustain the conviction of attempting to break and enter. There is clearly sufficient proof someone attempted to break and enter Greenwald's Supermarket in Fort Madison about 10:30 p.m. on July 20, 1956. But it is argued defendant's connection with the crime has not been sufficiently shown.

In considering this claim we view the evidence in the

light most favorable to the State. We are committed to the rule that a verdict of guilty is binding upon us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. State v. Poffenbarger, 247 Iowa 552, 554, 74 N.W.2d 585, 586, and citations; State v. Case, 247 Iowa 1019, 1030, 75 N.W.2d 233, 241.

About 10:30 on the night in question Mr. and Mrs. Powell and Mrs. Greenwald were driving by the supermarket when they heard the burglar alarm go off. They drove down an alley to the rear of the building where they saw an automobile parked in a hidden position about five to ten feet from the rear doors. After about five minutes the driver of the automobile hesitated and then whirled the car around and drove rapidly toward the street with his lights out. The Powells and Mrs. Greenwald gave chase. After they had driven about a half block they observed the number on the license plate as 77-690K. They had recognized the "77" while the car was parked at the rear of the building. The driver of the other car tried to elude his pursuers by driving as fast as 60 miles per hour and in other ways and soon succeeded in doing so. The Powells then immediately called the police and gave them a description of the automobile and its license number.

The Powells saw no car at the rear of the supermarket other than the one that escaped and no person there other than the driver. They were unable, however, to see the driver clearly enough to identify him as the defendant.

The police captain radioed to the other officers the description and license number of the car that eluded the Powells. He then went to the supermarket and found that a strip along the front door had been loosened and partly broken off. Also that the rear door had been jimmied and pried with some instrument and wood around the latch was "chewed" away.

State highway patrolman Simpson evidently heard the radio broadcast of the description and license number of the car that eluded the Powells. He was at Burlington, 18 miles north of Fort Madison, and parked his car at the south edge of the city on the state highway leading from Fort Madison to look for a car with license number 77-690K. About 11 o'clock the automobile he was looking for approached from the south at 90 to 100 miles per

hour. Simpson pursued it at speeds as high as 100 to 105 miles an hour. When defendant first saw the patrolman's red light he seemed to increase speed. When Simpson overtook the automobile it was traveling between 75 and 80 miles per hour and was being driven by defendant.

The patrolman and two Burlington police officers placed defendant under arrest. He did not ask Simpson anything or say a word until they got to the Burlington police station. The arresting officers found a number of articles in the car driven by defendant which were preserved and received in evidence at the trial. The Powells identified the car at the police station the next day as the one they had seen.

The articles found in the car were a pair of leather gloves found under the front seat, another pair of gloves and cotton flannel mittens found in the trunk, a license plate with a different number, a bag which appeared to contain a raincoat but in fact it contained two hood masks, a gasoline tank nozzle and two gasoline tanks in the trunk, a putty knife, saw, screwdriver, nail puller, wrench, hedge trimmer, crowbar, bolt cutter, shovel and dirty torn sheet.

The above is a sufficient summary of the State's evidence bearing on the crime of attempt to break and enter. Defendant had been convicted of three previous felonies—twice for larceny of a motor vehicle and once for breaking and entering. No evidence for defendant was offered.

Defendant's principal reliance arises from the failure of any witness to identify defendant at the scene of the crime or closer than 18 miles from it, about 25 minutes afterward. We think there is substantial evidence, circumstantial in character, of defendant's guilt.

Defendant was driving the automobile about 25 minutes after it "whirled" away, without lights, from its hidden position a few feet from the rear doors of the supermarket. No one else was then at the scene of the crime except the Powells and Mrs. Greenwald. The driver obviously tried hard to elude his pursuers and succeeded in the attempt. When defendant saw the patrolman's red light flash he increased speed in an unsuccessful effort to elude him and avoid arrest. When taken into custody defendant asked no questions and expressed no surprise. The

534

tools found in the car were similar to those used in committing the crime.

Of course it is possible defendant did not drive the car away from the supermarket. But we are not prepared to hold it may not be reasonably inferred under the circumstances that he did. Certainly the actions and conduct of the driver followed a consistent pattern both at Fort Madison and at Burlington.

These precedents lend support to our conclusion. State v. Lowenberg, 216 Iowa 222, 243 N.W. 538; State v. Manly, 211 Iowa 1043, 233 N.W. 110; State v. Hester, 205 Iowa 1047, 218 N.W. 616; State v. Alley, 149 Iowa 196, 128 N.W. 343.

In the cases just cited, all based on circumstantial evidence, there was testimony for defendant, absent here, in conflict with that offered by the State. The Lowenberg opinion, supra, observes it was of course possible defendant was not guilty but concludes "The inference to be drawn from the evidence was for the jury. * * * This court cannot say as a matter of law that an inference of guilt may not reasonably be drawn from all the facts and circumstances." (Page 229 of 216 Iowa.)

■ II. Defendant argues it was error to admit in evidence the articles found in the automobile. It is said they do not tend to show the commission of the crime charged, the manner in which it was committed or to elucidate some matter in issue. Although there is no direct evidence any of these articles was used on the night in question we hold it was not error to admit them in evidence.

■ The tools found in the automobile may properly be called burglar's tools. Mahar v. Lainson, 247 Iowa 297, 300, 301, 72 N.W.2d 516, 518, 519, and citations; State v. Smith, 247 Iowa 500, 503, 73 N.W.2d 189, 190, and citations.

Instruments found in the possession of accused which, although not identified as those actually used in committing the crime, are similar in form and character thereto, or which, from the circumstances of their finding justify an inference of the likelihood of their having been so used, are admissible in evidence for the purpose of showing availability to accused of the means of committing the crime in the manner it is shown to have occurred or for the purpose of showing preparation. State v.

Bales, 246 Iowa 446, 450, 451, 68 N.W.2d 95, 97, 98, and citations.

State v. Schenk, 236 Iowa 178, 191–3, 18 N.W.2d 169, 175, 176, approves the rule just stated with the amplification that instruments known or conceded not to have been used in the crime are admissible where they have some probative weight or constitute part of the picture. The opinion distinguishes State v. McHenry, 207 Iowa 760, 768, 223 N.W. 535, cited by defendant here.

State v. Alberts, 241 Iowa 1000, 1002, 43 N.W.2d 703, 705, points out that the trial court has considerable discretion in determining the admissibility of demonstrative evidence, great latitude is shown in admitting it and it is usually received if it affords a basis for a reasonable inference on a point in issue. See also in support of our holding in this division State v. Leftwich, 216 Iowa 1226, 1228, 1229, 250 N.W. 489; State v. Finnegan, 244 Iowa 166, 172, 173, 55 N.W.2d 223, 226, 227; State v. Linzmeyer, 248 Iowa 31, 37, 38, 79 N.W.2d 206, 209, 210.

III. Misconduct of the prosecuting attorney is claimed in that he told the jury in argument: "The State submits we have here a professional criminal as borne out by all this stuff here—pointing to the evidence—and his actions that night." Defendant's counsel objected to the argument as improper and asked that it be stricken. The court overruled the objection. Without expressing approval of the argument, we are not persuaded it entitles defendant to a reversal.

The statement complained of is in the nature of a conclusion drawn from the evidence and appears to have some basis therein. At least it is clear that if the prosecutor had referred to defendant as a habitual criminal, rather than a professional one, the argument would have been entirely proper. Defendant was charged with being a habitual criminal and undisputed evidence supports the charge. Although there is some distinction between a professional criminal and a habitual one the two terms are somewhat similar.

In argument to a jury counsel are entitled to at least some latitude in drawing conclusions from the evidence and pointing out inferences they feel may be drawn therefrom. State v. Bell, 235 Iowa 767, 771–3, 16 N.W.2d 218, 220, 221; State v. Thomas, 135 Iowa 717, 728, 109 N.W. 900; State v. Beasley, 84

Iowa 83, 87, 88, 50 N.W. 570. See also 23 C. J. S., Criminal Law, section 1090.

We have held repeatedly that misconduct of the prosecuting attorney in argument does not require granting a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial. State v. Case, supra, 247 Iowa 1019, 1029, 75 N.W.2d 233, 240, and citations; State v. Dale, 225 Iowa 1254, 1257, 282 N.W. 715; State v. Thomas, supra, 135 Iowa 717, 729, 109 N.W. 900.

We have also frequently pointed out that the trial court is in much better position than we are to judge whether claimed misconduct of counsel is so prejudicial as amounts to denial of a fair trial. Considerable discretion is allowed the trial court in passing on such a matter and we will not interfere with its determination unless it clearly appears there has been a manifest abuse of such discretion. State v. Case, supra, and precedents cited at page 1030 of 247 Iowa, page 240 of 75 N.W.2d; State v. Smith, 219 Iowa 168, 177, 256 N.W. 651; State v. Thomas, supra.

The experienced trial court necessarily found defendant was accorded a fair trial notwithstanding defendant's claim of misconduct of the prosecutor. After giving such finding the weight it deserves we are not justified in holding it clearly appears the finding was a manifest abuse of discretion.—Affirmed.

All JUSTICES concur.