STATE OF IOWA, Appellee, v. MARK BOSWORTH, Appellant.

**APPEAL AND ERROR:** Motion for Directed Verdict—Refusal—
Waiver of Ruling. He who moves for directed verdict and suffers an adverse ruling, and thereupon introduces his testimony, must then renew his motion or waiver of the adverse ruling will result; and so, though overruling the motion to direct is one of the grounds of an overruled motion for new trial.

**CRIMINAL LAW:** Alibi—Erroneous Application. Alibi implies a claim on the part of the accused that at the time of the commission of the offense in question he was at some other place and so far distant that he could not have committed it. Applying the doctrine over the objection of the accused, with the usual caution that it should be closely scanned because easily manufactured, to a state of evidence wherein the accused admitted that he was within twenty-five feet of the place where and when the act charged was committed, but denied all participation therein, constitutes reversible error, because (a) without basis in the evidence, (b) misleading the jury to infer that the sole defense of the accused was that he was so far away that he could not have reached the place in question, (c) disparaging and discrediting the entire evidence bearing on his nonparticipation in the act charged, and (d) practically throwing the burden of proof of innocence on the accused.

**CRIMINAL LAW:** Alibi—Consenting to Improper Application. The mere fact that the accused accounts for his whereabouts up to a time shortly before the commission of the offense charged furnishes no basis for injecting the issue of alibi into the case, when the accused admits that he was within 25 feet of the place where and when the act charged was committed but denies all participation therein.

**CRIMINAL LAW:** Malicious Injury to Property—Essential Allegations. An indictment for maliciously injuring or destroying an electrical apparatus under Sec. 4807, Sup. Code, 1913, should, among other essential allegations, allege (a) the particular apparatus injured, (b) that it was an electrical apparatus, (c) the ownership of said apparatus and (d), if the ownership is in a corporation, the fact of incorporation should be alleged. Proof must meet and sustain the allegations. Proof showing the existence of a corporation *de facto* is sufficient.

**CRIMINAL LAW:** Corporate Existence—De Facto Existence—Proof
—Insufficiency. Testimony that cars were being operated by the

"Oskaloosa Traction & Light Company," and loose statements disclosing the existence of trolleys, trolley wires, electric power houses, etc., do not establish the existence of a *de facto* corporation or the ownership of any property.

CRIMINAL LAW: Conspiracy—Accessory—Approval and Inaction Only. It is correct for the court to charge that defendant may be convicted though he did not actually participate in the consummation of the offense charged, provided it be shown beyond a reasonable doubt by proof, direct or circumstantial, that the offense was consummated by others in pursuance of a conspiracy in which defendant was a party. It is reversible error for the court to refuse to amplify such instruction, when requested by the defendant, by clearly embodying the thought that defendant cannot properly be convicted from the mere fact that he witnessed the unlawful acts, even approved of them, remained silent and made no effort to stop them.

PRINCIPLE APPLIED: In instant case, the requested instruction was that in order to convict it must be shown: "That he met at said place, in accordance with a common design or appointment with the alleged persons unknown, for the purpose of destroying the property of the street railway company, and that although he may have been in sympathy with the acts of the rioters, he is entitled to acquittal unless he aided in what the rioters did."

CRIMINAL LAW: Malicious "Injury" or "Destruction"—Variance. Under a charge of maliciously "removing and destroying" a street car (Sec. 4807, Sup. Code, 1913), a conviction cannot be supported on evidence of a mere "injury."

CRIMINAL LAW: Trial—Reception of Evidence—Failure to Object —When Considered on Appeal. Where an error has not been sufficiently excepted to in a criminal case and there is to be a retrial because of other errors, the error insufficiently excepted to will be considered on appeal for the purpose of directing the proper course on retrial.

CRIMINAL LAW: Good Character—Effect on Question of Guilt. The law makes no attempt to specify just what effect, as a matter of law, shall be given to evidence of previous good character, but leaves its value as defensive evidence in any given case to be determined by the jury. Therefore a requested instruction to the effect that such evidence is sufficient to overcome the evidence of guilt, where the evidence is not convincing and of such a nature as to exclude a reasonable doubt of his innocence, is properly refused.

**CRIMINAL LAW:** Defining Terms—Necessity for—"Remove." It
is not necessary for the court to define the word "remove." So
held under a charge of maliciously removing a street car. (Sec.
4807, Sup. Code, 1913.)

*Appeal from Mahaska District Court.*—HON. JOHN F. TAL-
BOTT, Judge.

FRIDAY, MAY 14, 1915.

INDICTMENT charging defendant with maliciously and
unlawfully injuring, removing and destroying a street car
belonging to an electric railway, to wit, the Oskaloosa Trac-
tion & Light Company, of Oskaloosa, Iowa. Defendant was
convicted and appeals.—*Reversed and Remanded.*

*Davis & Orvis,* for appellant.

*D. W. Hamilton, John McCutchen, George Cosson,* At-
torney General, and *Wiley S. Rankin,* Special Counsel, for
appellee.

SALINGER, J.—I. Error is assigned on the overruling of
defendant's motion to direct a verdict. The motion was made
at the close of the testimony for the State, and after its
overruling, the defendant introduced his tes-
timony. The motion was never renewed. In
this state of the record, we cannot review the
assignment. This is so despite that the mo-
tion for new trial asserts that the motion to direct verdict
should have been sustained.

1. APPEAL AND
ERROR: motion
for directed
verdict: re-
fusal: waiver
of ruling.

II. The acts upon which the indictment was based were
committed between 11:15 at night and midnight. Earlier
the same evening, the defendant was about town and attended
the theater. He arrived at the scene of the
alleged crime about 11:15. There is testi-
mony that he then participated. On the
other hand, he contends that he remained on the sidewalk,
some 25 feet from the participants. Over his objection, the
court charged (instruction No. 6) that the defense of alibi

2. CRIMINAL
LAW: alibi:
erroneous
application.

was being made, and that defendant claims to have been so
far away that he could not with ordinary exertion have been
present at the commission of the crime charged. The burden
is put on defendant to prove this defense, with the proviso
that, if the evidence on the alibi, with all the other evidence,
raises a reasonable doubt, there should be an acquittal; and
the jury is told that this is a defense which is easily manu-
factured, and should, therefore, be scanned with care and
caution. The objection of the defendant was, in effect, that
he claims no alibi; that he concedes that he was present where
he could have done what he is accused of doing, but did not.
He urges that, while the instruction may be abstractly cor-
rect, it has no basis in the record and was prejudicial, and
that the underscoring therein of the word alibi was an addi-
tional error, as well as an aggravation of the error committed
in giving the instruction at all.

The State responds that the sole objection is to the in-
struction as a whole; that it is not well taken because defend-
ant concedes the instruction to be applicable to the evidence
concerning his doings before 11 o'clock; that by putting in
such evidence, he himself injected alibi into the case; and
that against this, it is not controlling what label the defendant
puts on the defense which he did make, nor what he claims
for it. It is further said that the instruction given is uni-
formly approved by many of our decisions, and that there is
nothing irregular about it, unless it be the underscoring of
the word alibi, and that, if the instruction is warranted, the
underscoring of this word cannot be error.

1. Proceeding by way of elimination, we have to say we
find nothing in the record to sustain the claim that defendant
consented to the giving of the instruction so far as it relates
to earlier than 11 o'clock. He objected to its
giving, on the ground that he was not claim-
ing an alibi. This objection is *in toto* and
upon a ground which eliminates the theory
that the instruction is conceded to be applicable to some phase

3. CRIMINAL
LAW : alibi :
consenting to
improper ap-
plication.

of the evidence. The testimony covering the time up to 11 o'clock is relevant to defendant's denial that he was in a conspiracy and interested in what his co-conspirators were doing in his absence; and as such testimony had bearing upon something other than alibi, the naked fact of its presentment does not create a volunteer issue, nor operate as a consent to instruct upon alibi. Abstractly it is true that what defendant claims his defense is does not settle what defense he actually interposes. Yet the fact that at the time the instruction was given he asked that it be withdrawn, on the ground that it presented a defense not claimed by him, has the twofold effect of bearing upon what defense was actually interposed by him and on whether he voluntarily presented an alibi for decision.

We agree that, if there was warrant for instructing on alibi, the underscoring of the word alibi is of no consequence, and agree that the charge was one of approved form. But it does not follow that it is material that such instruction is in approved form. If there was no evidence to base the instruction, it cannot be defended though it was in proper form. We thus reach the real question on this head,—whether there was any evidence which warranted the giving of this charge, and whether, if it was unwarranted by the record, its giving was prejudicial.

2. The theory of the State is that, as defendant claims he "was 25 feet away and no closer," he so asserted that it was "physically impossible for him to have participated in the identical crime from his location"; that this presents the defense of alibi as much as though he had remained 500 feet away; that the size of the distance, if not wholly immaterial, is not controlling, and that the following authorities sustain this contention: 2 Am. & Eng. Enc. of Law, page 53, and foot-note, states, in effect, that alibi "literally" means "elsewhere" and that the defendant or person accused was in a place which "precludes the idea that he was the perpetrator." The cases cited in support of this text are: *Hardin's* case

46 Iowa 623, 628, in which it is charged there must be proof of where defendant claims to have been at the time the crime was committed, all the time during its commission, or at such time that he could not, with any ordinary exertion, have reached the place of committing. The correctness of this is not passed upon, and the decision turns entirely upon "the degree of proof of an alibi which must be produced to entitle defendant to an acquittal," and the requirement that the jury should be "fully satisfied by a preponderance that these defendants were situated as is above stated" is held to demand too great a degree of proof. In *Fry's* case, 67 Iowa at 478, there is again no decision on what is the law concerning distance. The only point ruled is that the degree of proof is correctly stated. *Maher's* case, 74 Iowa 77, also holds that the charge on degree of proof is correctly stated. For the rest, it is a decision that the court has discretion as to order of proof on alibi.

Aside from this support for this text, there is *Child's* case, 20 Pac. 275 (Kansas), wherein it was charged that the proof must show that participation was "practically improbable or impossible." Whether this is correct is not touched. And the decision is merely that it was error to charge that defendant had the burden of proof on this.

*Peyton's* case, 54 Neb. at 190, holds that, while being at some distance from the alleged place of commitment is "necessarily elemental" in proof of alibi, yet "the distance disclosed by the evidence is not always an absolutely controlling fact"; that the distance itself bears merely on the strength of the defense, and it is error to require that "the distance must be such as to preclude any possibility of a participation in the crime",—all of which means merely that the jury must sustain the alibi if it believes defendant was so far away as to make participation impossible, and may sustain it, though the evidence that the distance was so great as this is less conclusive

and is such as to leave the impossibility of participation a debatable question.

In *Gulliver's* case, 163 Iowa 123, an instruction does charge that the testimony in support of an alibi must show that defendant was so far away that he could not be present at the scene of the crime. But the only thing decided is that instructing that such testimony "is entitled to weight" constitutes a departure from the correct rule, which is that, instead of being merely entitled to weight, such testimony may work an acquittal, if, in connection with all the testimony, it raises a reasonable doubt. In other words, the case assumes that what is required to be proven is correctly stated, criticizes the instruction because it, standing alone, fails to make clear what consideration such testimony is entitled to, and decides also that this fault is cured by other parts of the charge.

The utmost that can be claimed for all this is that one showing as to distance may settle conclusively that the defendant could not have participated, another may establish conclusively that the distance shown is insufficient to sustain an alibi, and, third, that the showing as to distance may be such as to leave it a question for the jury whether an alibi is made out. We are therefore brought to deal with the question at bar unaffected by the citations made for the State, and to consider its contention in the light of adjudications other than the ones cited by it, and in the light of reason.

3. It is urged upon us that, while defendant does not deny that he was near the scene of action at the identical time when the offense occurred, "what he does claim is he was 25 feet away and no closer"; that his claim of a "physical impossibility" to have reached the place of commission refers to "the possibility of reaching out and touching the car from the identical place where the defendant was standing." It is illustrated that one might see something occur while "three blocks" distant, or see an occurrence while stand-

ing but a "few feet away and the elements of alibi involved would be the same"; that one might be in a room adjoining, with the door closed, and at a distance of but a few inches; and that, while "in both of these instances the 'physical impossibility' would vary," it is the claim of the State "that the defense would be alibi because at the identical moment when the crime was committed, it was physically impossible for the defendant to participate in that identical crime from his location"; and that this "does not mean that if there were sufficient time defendant could not walk to the place where the offense was committed." The ultimate statement of the State is that a claim by defendant that he "was so far away that it was physically impossible for him to reach out and touch the car" asserts an alibi, and "that 25 feet was as sufficient as 500 feet would be in the matter of an alibi."

II. When the plea of not guilty is entered, the State must prove guilt, but the defendant may fortify his plea of not guilty by evidence. In many cases, such evidence is that, while he was not prevented by distance from committing the act charged, yet he refrained from doing so. This very often involves the claim that accused did not come into physical contact with somebody or something. In every case wherein it is defended that accused did not commit an assault though nothing prevented his committing it, it is claimed, of necessity, that the hands of defendant did not touch the body of his alleged victim. One accused of having struck a blow with his fist, who admits that he was within five feet of the person struck and asserts that he was never closer, denies physical contact. On the theory of the State, each of these is the defense of alibi. The practical effect would be to shift the burden of proof in such cases and to relieve the State from overcoming the plea of not guilty. Say the charge is rape, and defendant admits he was where he could have committed the act, but insists that he at no time went closer

to the prosecutrix than four feet. It would seem that the State is not entitled to a conviction unless it proves beyond a reasonable doubt that this claim is false; or, in other words, proves that there was a time when defendant got closer than that. Were we to sustain the contention of the State, then, while it would remain its burden to make this proof beyond a reasonable doubt, it would at the same time be the duty of the defendant to prove by a preponderance that his claim as to distance maintained by him was true. Were we not committed to the rule that defendant has the burden of proof on alibi, it might do no substantial harm to accede to this rather startling theory. But we do put the burden of proof on the defendant. And the result would be that, while the State retains the burden of proving him guilty, his evidence that he did not touch the person upon whom he is charged to have committed the violent assault would, by the simple method of terming it evidence to support an alibi, be sent to the jury with direction to review it with care and caution, and to treat it as supporting a defense which might be easily manufactured.

In *State v. Lindsay*, 152 Iowa 403, 405, the charge was that the defendant had ravished a little girl, having taken several children, including the prosecutrix, on trips in his auto. The testimony was that he was met on these several trips, and the time of meeting was fixed between five and six o'clock in the afternoon. According to the story of the prosecutrix, one of the first persons she saw after the defendant left her was a Mrs. Marquis, and the latter fixed this time as being 5:30 in the afternoon. An instruction involving alibi was complained of for having no basis in the record, and this contention was sustained, and the court said:

"The only evidence pointed out to us by the State in support of these instructions is the evidence of a witness for the defendant, who fixes the time of defendant's return to Prairie City at five minutes before six. The prosecutrix testi-

fied that when she saw Mrs. Marquis it had been fifteen minutes or less since the defendant left her. The exact distance from Colfax to Prairie City does not appear, but it is a near-by town in the same county, and there is no claim made on either side that the distance could not have been traversed within a half an hour. We find nothing, either in the defendant's testimony or in that of the witnesses in his behalf, which can be said to present the defense of alibi. On the contrary, the testimony of the defendant himself was that he did take the little girl riding at or about the time she says he did. He does not claim that it was physically impossible for him to have perpetrated the crime because of distance separating him from the prosecutrix. He concedes his presence with the little girl at or near the time of the alleged crime, but he denies that he perpetrated any crime upon her.''

This is a full recognition of the distinction we are pointing out. The defense of alibi, which casts certain burdens upon the defendant, is an affirmative defense which asserts that distance made it impossible to commit the crime. What was done here amounts to a denial of guilt, with the concession that no distance or other physical cause made it impossible, or even improbable, that defendant committed the offense. It amounts to a plea of not guilty, and the defendant is not bound to prove its truth, nor should his testimony in support of such plea be disparaged.

In *Lindsay's* case, the charge as to alibi defined the same to be ''that at the time of the commission of the alleged offense with which he was charged he was at a different place so that he could not have participated in its commission.'' In the case at bar, the charge is, ''it must be shown at the very time of the commission of the crime alleged, if one was committed, the accused was at another place so far away, or under such circumstances, that he could not with any ordinary exertion, have reached the place where the crime was committed, so as to have participated therein.'' We are

unable to see any difference in the two instructions which dictates that we should not reach the conclusion announced in the *Lindsay* case.

That the instruction now in review was prejudicial is manifest. Even in a civil case, the giving of an instruction which has no basis in the evidence is error. To say nothing of the presumption of prejudice which arises from the fact that the charge given was erroneous, this record makes an affirmative showing of prejudice. In the first place, its tendency was to lead the jury to infer that the only defense was that defendant was so far away that he could not have reached the place where the crime was committed. At the least, some of the attention of the jury which should have been expended upon matter that should have consideration was devoted to this point. There is the additional prejudice pointed out in the *Lindsay* case, "The instructions upon this subject placed him and his defense in a false light before the jury. The findings of the jury would necessarily be adverse to such an alleged defense. There was no testimony on either side from which an alibi could be found, in the sense in which that term is used in criminal cases, and in which it was defined by the court."

What is even more prejudicial is what we have repeatedly dwelt on: that the testimony which defendant adduced to fortify his plea of not guilty was sent to the jury under disparagement, with direction to scan it carefully, to be cautious in giving it weight, and further, that it was for defendant to show, by a preponderance, that his testimony was true.

It is none too clear what is meant by the rule which puts the burden as to alibi on the defendant, and makes his testimony on alibi available in aid of creating a reasonable doubt which, if entertained, effects a holding that the State has not met its burden. This distinction we have herein pointed out tends to help clear the tangle. A denial that defendant participated leaves the burden on the State. If coupled with

the denial there be a claim that the evidence shows the defendant was too far away to have participated, an acquittal can be had upon that affirmative defense alone, but only if defendant proves such defense. That he fails to prove it does not excuse the State from proving beyond a reasonable doubt that he is guilty, and though the affirmative defense fails, as such, the evidence adduced in its support may make a reasonable doubt as to the guilt of defendant. But whatever is the true line of adjustment of these burdens of proof, the burden of the State, to prove the defendant guilty, may not be shifted, in whole or in part, by insisting erroneously that defendant is interposing the defense of alibi.

The *Lindsay* case finds that substantially what is done here constitutes manifestly prejudicial error, and we cannot escape from reaching the same conclusion here.

III. Sec. 4807 of the 1913 Supplement to the Code makes it a felony to injure, remove or destroy any electric railway or apparatus thereto belonging. The indictment follows the

4. CRIMINAL LAW: malicious injury to property: essential allegations.

language of the statute, and charges the defendant with committing the crime therein prohibited, in that he maliciously and unlawfully injured, removed and destroyed a certain apparatus belonging to an electric railway of the Oskaloosa Traction and Light Company of Oskaloosa, to wit, a street car. The defendant urged below, and now insists, that the verdict is without support in the evidence because there is no competent testimony that the company named in the indictment exists, nor that it is an electric railway, nor that it had the right to own cars, nor that it did own any.

The State says it is not "absolutely essential" to prove the ownership of the car. The authorities cited by defendant, claiming that the rule which requires the proof of needless allegation in indictment applies here, need no consideration. For it seems to us that both the statute and the indictment make it necessary that there should be proof: first, that there was an electric railway of the name stated in

the indictment; second, that defendant did what the indictment charges concerning some apparatus belonging to such a company. This, too, was the theory of the trial. By instructions three, twelve and fourteen, it is made one of the elements necessary to a conviction that the unlawful acts charged were done upon street cars which were a part of the apparatus "belonging to the electric street railway of the Oskaloosa Traction and Light Company," of Oskaloosa, Iowa —and they rule the law.

## 2

The claim of defendant that, on the charge of larceny, it must be proven that the stolen property belonged to an individual company, partnership or corporation, and belonged to someone other than defendant, is indisputably sound, and the many citations in its support are unnecessary. Nor is the rule limited to larceny. Whenever a statute so describes an offense that it cannot be committed unless the property affected by the offense belongs to someone other than the defendant, the ownership of that other must be alleged and proven as alleged. *Whittier's* case [State v. Whittier], 21 Me. 341. So, for instance, where the unlawful killing of an animal is prohibited when done in an enclosure surrounded by a lawful fence, there must be an acquittal if the proof fails to disclose the existence of such enclosure. *Deal's* case [State v. Deal], 92 N. C. 802. This case does not differ in principle from the one at bar. Even as the charge of killing within an enclosure surrounded by a lawful fence lacks proof to sustain the conviction unless it is shown that the enclosure was so surrounded, so is there fatal failure of proof if, on prosecution under a statute for injuring an apparatus belonging to an electric railway, there is no proof that there is such company in existence, and that the property injured belonged to it.

Cases may and usually do differ in facts, but such difference does not preclude evolving a rule from them. So, here,

none of the cases we consider are exactly in point in the sense that their facts are the facts at bar. Yet they make clear that alleging and proving ownership in someone other than defendant is essential under the indictment before us.

In *Kelley's* case, 206 Mo. 685, the ownership was laid in a corporation. It was held that the fact of incorporation should be alleged, and that this was necessary, though the existence of a corporation *de facto* will sustain the charge; and as nothing is to be left to intendment, defendant is entitled to know whether the state intends to show ownership in individuals, in a firm composed of individuals, or in a corporation. It has been held that in larceny it may be proved by general reputation that the owner is a corporation. *Thompson's* case, 23 Kans. 338. And so on a charge of uttering a counterfeit note. *Reed's* case, [Reed v. State], 15 Ohio 217; *Ah Sam's* case, 41 Calif. 645. On forgery of a draft of a mining company, testimony that witness was president of the company, and found the forged draft with its vouchers, was held sufficient proof that the company was a corporation *de facto*. *Frank's* case, 28 Calif. 507. And so of testimony that the company known by the name given in the indictment was a corporation *de facto,* and doing business as such. *Barric's* case, 49 Calif. 342. In *People v. Hughes,* 29 Calif. 257, defendant was charged with burning a building insured by a duly incorporated company of the name Hartford Insurance Company. A witness testified that he was acting as the agent of the corporation having the insurance, delivered the policy, and that it was received by defendant. It was held that from these facts the jury might well find the *de facto* existence of the corporation. In *Miller's* case, 21 Pac. 1025, the indictment charges that stolen property belonged to a named railroad and that the same is a corporation. The evidence is not set out, but the court says: "Upon a careful review of the entire record in this case, we are unable to escape the

conclusion that the prosecution failed to establish by proof that the property alleged to have been received as stolen goods was the property of the Denver & Rio Grand R. R. Co., as charged in the indictment." The court also said: "It is necessary for the prosecution to prove that the company was *de facto* organized." In *Hawkins v. State,* 20 S. E. 217 (Ga.), the charge was stealing a clock from a schoolhouse. The principal of the school testified that the clock was the property of the city of Atlanta. The witness was asked how he knew the clock belonged to the city, and he said because one S, the superintendent of the school, told him. It was held that this was insufficient proof of ownership to sustain a conviction.

As said, while each and all of these cases differ in their facts from each other and from the case now in consideration, the very fact that each and all of them found it necessary to dispose of the question we are now considering, by holding either that there was or was not sufficient proof on the existence of the alleged owner, or of his ownership, demonstrates, in spite of the varying facts upon which the cases turn, that such proof is deemed vital.

What we have left for decision, then, is not what the law is, but whether the existence of the named company and its ownership of the cars in question is sufficiently supported by the evidence to sustain the conviction here appealed from.

The only direct testimony either of the existence of the corporation named, or that the cars in question were its property, is, first, the testimony of one True that the cars "were being operated by the Oskaloosa Traction and 5. CRIMINAL LAW: corporate existence: *de facto* existence: proof: insufficiency. Light Company"; and, second, loose statements disclosing the existence of trolleys, trolley wires, electric power houses, and that trolleys were seen to fly off wires and lights to go out. It is self-evident that this is far from being satisfactory proof that the Traction Company named in the indictment exists, is an electric railway, and is capable of owning

cars, and did own the ones upon which the alleged unlawful acts were done. We are constrained to say this does not satisfactorily meet the standard as to the proof required to sustain a conviction for felony, and that the testimony on this head should not be left in this condition, on re-trial. It should be easy to make proper proof on this vital point. The cases we cite on the proposition that proof is required indicate what is competent proof. After this pronouncement, we may reasonably anticipate that it will be done. In view of this, and of the fact that we reverse on other grounds, we need not and do not put the reversal of the conviction appealed from on the condition of the evidence on existence and title.

IV. The only evidence for which it might be claimed that it establishes *any* conspiracy in which defendant participated is: first, that he witnessed the riotous acts, remained

6. CRIMINAL LAW: conspiracy: accessory: approval and inaction only.

silent, and made no effort to stop them; and, second, the testimony of one witness, denied by several, that defendant stated concerning a car (the character and ownership of which is not disclosed) which was loaded on a freight car near the M. & St. L. depot, "Let's go down and burn the son of a bitch." The witnesses, other than the one, say the statement of the defendant was a proposal to go down and protect this car. In instructions twelve, thirteen and fourteen the court charged, in substance, that defendant might be convicted though he did not actually take part in the acts complained of, if proof, either direct or circumstantial, establishes beyond a reasonable doubt that the crime was committed by persons unknown, substantially as charged, in pursuance of a conspiracy in which defendant was a participant. Abstractly speaking, the instructions correctly announce the law, and, in the absence of a request that they be amplified, they sufficiently present all the law relevant to the matter charged upon. But defendant was refused an instruction that the mere fact of his being present at the place "should not be adjudged against him," even though he may have acquiesced

in the doings of the mob and took no steps to stop same; and that to find him guilty it must be shown, "That he met at said place, in accordance with a common design, or appointment with the alleged persons unknown, for the purpose of destroying the property of the street railway company, and that although he may have been in sympathy with the acts of the rioters, he is entitled to acquittal unless he aided in what the rioters did."

No objection was made below, and none is presented here, that the evidence did not warrant the instruction which the court gave, and we are precluded from going into that question. But even if defendant has waived the right to complain of the fact that this instruction was given at all, he has preserved the right to present here that it should have been amplified as requested. The instructions given did not prohibit the jury from finding the defendant guilty merely because it was found that he was present and remained silent and inactive, or if they believed that he made a proposal to go and burn some car somewhere. We have no way of knowing but that the verdict of guilty rests upon one or both of these matters. "An instruction is erroneous if it authorizes the jury to convict the defendant because of his presence or mere mental approval or consent without requiring that he shall have aided in or encouraged the commission of the crime." 12 Cyc. 616. Mere passive failure to disclose the commission of a crime will not make one an accessory. *Davis v. State*, 130 S. W. 547, 549 (Ark). In *Hicks v. United States*, 150 U. S. 442, a case which appellant erroneously cites for the claim that the court should have instructed more specifically on the definition of aider and abettor, it is, however, held that the mere use of words, the effect of which is to encourage another to commit a crime, does not make the user thereof an aider and abettor unless he intended them to have that effect. We are unable to accede to the claim that instruction number seven "fully gives the defendant all his rights" on this head. It is nothing but the usual instruction on credi-

bility of witnesses and on how to test testimony. We think the rights of the defendant on how the charge of conspiracy should be dealt with were, by means of the refusal of instruction number three, nowhere guarded; that this refusal made it possible to convict for mere silence and inaction, or for uttering a proposal to bystanders to burn some car, and that, therefore, the refusal constitutes reversible error.

The indictment charges that defendant "did unlawfully remove *and* destroy a street car belonging" to the company named in the indictment. Instruction three requires the state to prove unlawful taking possession of *and* removing, injuring or destroying a street car. Instruction twelve holds there may be a conviction if a conspiracy was participated in "to take possession of, injure or destroy" such car. And instruction fourteen also uses "or" where the indictment uses "and." These instructions authorize a conviction if a street car belonging to the named company was destroyed. There is some casual testimony which indicates that some car of some kind, belonging to someone, had been burned. None that defendant had any part in the burning. Now while, on the question whether defendant was acting as a co-conspirator in an attack upon a street car belonging to the company named in the indictment, it may be relevant that he participated in the burning of some car, even though it was nôt a street car and did not belong to that company, it furnishes no evidence that any property belonging to that traction company was destroyed. So far as street cars belonging to the traction company are concerned, there is evidence that one of them was run into another; that the fender of the first was thus damaged; and that the impact caused some injury to the other. This was injury, and not destruction. The statute covers injury and destruction by distinct words, and it cannot have been its intention to make one the equivalent of the other. The injury to these cars did not constitute the destruction of either. It seems, then, that it was made possible for the jury to find the defendant guilty of destroying a street car, in the

7. CRIMINAL LAW: malicious "injury" or "destruction": variance.

absence of any evidence that one was destroyed. In this condition of the record, it becomes an important question what objections to these instructions were made below and what is urged against the charge here. We are unable to find that instruction three was challenged below. Assuming this to be a case wherein objection in motion for new trial suffices, the most that can be found is this: (1) An exception that it was error to use "or" where the indictment employs "and," because of the rather strained reason that this confused the jury on which of the several acts specified in the charge conviction could be based; (2) a complaint "that there was no evidence defendant was present at the burning of any of the cars, either at the M. & St. L. depot, or south of town." But this is not addressed to these instructions but to number six, the one on alibi.

It is doubtful, to say the least, whether objection was ever made presenting that a conviction was made possible for destroying a car belonging to the traction company though there was no evidence of such destruction. But the fact remains that the charge did authorize such conviction. When we find an error which is perhaps not adequately raised, and there is to be a retrial on which such error might be repeated and properly raised and urged, we may well point out such error. And while we feel that in the state of the record we should not reverse upon this point, we are constrained to say that if, on retrial, the proof remains the same, the instructions given should eliminate the element of destruction of the street car.

8. CRIMINAL LAW : trial : reception of evidence : failure to object : when considered on appeal.

V. Instruction eleven charges that the jury has the right to consider the evidence which was introduced as to the good moral character of defendant, and as to his good reputation as a peaceable and quiet citizen; to consider this as bearing on the general issue of guilt or innocence; that it is to be considered on the theory that men of good character in these respects are less liable to commit crime than men of bad character.

9. CRIMINAL LAW : good character : effect on question of guilt.

It is said, however, that this does not rebut the commission of the crime except by inference, and may be considered in such light and for such purpose. The defendant asked that there be added thereto. that, if the jury finds it to be a fact that defendant is a man of good moral character, "this is sufficient to overcome the question of guilt where the evidence is not convincing and of such a nature as to exclude a reasonable doubt of his innocence." It is urged it was error to refuse this modification, and a number of our cases are cited in support of this contention. In *Donovan's* case, 61 Iowa 278, 280, the charge was, that "previous good character is not of itself a defense, but is a circumstance which should be considered by the jury in connection with all the other evidence, and it may be sufficient to turn the scale in his favor, but its value as defensive evidence in any given case is to be determined by the jury." Passing whether this differs substantially from the instruction which the court did give, the objection in the *Donovan* case was that this instruction did not place sufficient effect upon proof of good character, and the case decides that this objection is not well taken, and that the instruction gives all the effect to proof of good character which the authorities warrant. In *State v. Clemons*, 51 Iowa at 278, an instruction given in the *Webster* case, 5 Cush. (Mass.) 295, that, on a trial for murder, testimony of the defendant's good character is competent evidence of defense, though entitled to less weight than in trials for offenses of a lower grade, is disapproved. It is said that the true rule is stated in *Northrup's* case, 48 Iowa 583, and *Horning's* case, 49 Iowa 158.

In *Northrup's* case, the jury was told, in substance, that evidence of good character could be of no avail or benefit to defendants unless the question of their guilt was doubtful upon a consideration of the evidence other than that in relation to their good character. The case holds the true rule to be "that the good character of the accused is for the consideration of the jury in all cases, and it is for them to determine

its weight without any (such) instructions from the court.''
It is said there may be cases where without evidence of good
character the jury would and should convict, and with it they
would and should acquit, that a long and honorable life must
be worth something to a man when accused of crime in cases
other than those where the evidence, independent of his good
character, is doubtful or obscure. It is pointed out that under
these instructions it was the duty of the jury, first, to deter-
mine whether the evidence was doubtful or obscure, without
considering the evidence on character, and ''if this question
was determined in the affirmative, then a verdict of guilty
follows.'' It is held that this places the man who affirma-
tively establishes a good character on the same plane with one
''who has not or cannot do so.'' It is said:

''No presumption exists against one who does not attempt
to establish a good character except such as can be legiti-
mately drawn from the evidence. Therefore, the same quan-
tity and quality of evidence should make a clear or strong
case against both. The evidence which creates a doubt, unless
good character may be considered in determining whether
such a doubt exists or not, must necessarily be the same as
to all men and cases, if the rule of the instructions in this case
be correct. We cannot subscribe to any such doctrine. Good
character, like all other facts in the case, could be considered
by the jury, and if therefrom a reasonable doubt is gener-
ated in the mind of the jury as to the guilt of the accused, it is
their duty to acquit. Of course, we must not be understood
as saying that good character is a defense, for it is not as a
matter of law. But it is a fact for the consideration of the
jury, as are all the other facts in the case, and they must
determine its weight in all cases.''

In *Horning's* case, the evidence of guilt was very weak,
and the charge that, while evidence of a good character will
go far to rebut any presumption of guilt arising from circum-

stantial evidence, as against positive testimony from reliable and creditable witnesses, good character avails nothing and should be disregarded, even if fully proved, is condemned.

In *State v. Jones*, 52 Iowa, at 151, the evidence was circumstantial, and the court charged that "good character affects nothing as against established facts." We held that if this means good character is of no avail where guilt is established, it is right, because good character is no defense against guilt. But it is found that the charge was probably understood in the sense that if, in a case made out by circumstances, the several facts from which guilt may be inferred are established, good character can affect nothing and should have no weight. It is said that this is unsound; that good character is always entitled to consideration, and always should have some effect on the verdict; that where the evidence is circumstantial and the several facts from which it is sought to draw the inference of guilt are clearly established, a jury may from proof of good character alone refuse to infer that the defendant is guilty.

In *State v. Lindley*, 51 Iowa 343, an instruction directing the jury that previous good character would not constitute a defense as against facts positively or strongly proven was held to be erroneous. On page 344, the court said: "There may be cases where a state of facts may be said to be strongly proven, and yet the jury may be justified in the light of an unblemished character in finding a verdict of not guilty."

In *Fitzgerald's* case [State v. Fitzgerald], 49 Iowa 260, it is held merely that on whether the presumption was rebutted that an attempt at abortion by a wife was under coercion by the husband, it was error to admit evidence that the defendant consented to her husband's having sexual intercourse with the prosecuting witness months before the alleged crime was committed, especially so in view of the fact that the defendant showed that she was a woman of good character and reputation.

We find in none of these anything that is in substantial

conflict with the rule laid down by the trial court, and that there was no error in refusing the modification offered.

VI. Conceding that the authorities establish that courts usually define words like "preponderance" and "reasonable doubt," and "temporary insanity," this does not persuade us that any error was committed by failure to give a definition of the word "remove." One charge in the indictment is in the language of the statute, to wit: That the defendant unlawfully, etc., did "remove" a certain street car, described. Webster defines the word "remove" to mean "to move away from the position occupied." Bouvier says it means "moving away from the position occupied; to displace; to change in any manner." The jury had before it evidence that the defendant participated with other rioters in violently pushing a street car for some forty feet along the track upon which it stood and finally into another car in front of it, and that all this was done, as an act of violence, without the consent of the owner of the cars. The book definitions of "remove" are natural ones, and give it the meaning that ordinary minds would naturally attribute to it. How a definition by the court would have helped in the simple task of determining whether under such evidence the defendant had been engaged in removing the car, we are unable to see. Offered instruction number one asks a charge that the term means, "To cause the same to leave or cease to be; to take the thing away; hence, to vanish and destroy; and if the defendant did not take the car away or aid or abet in destroying said car at the place where the same was destroyed, he is not guilty, and should be acquitted."

Manifestly, the court was right in refusing to give this instruction. Its basic thought is that unless the car was lifted bodily off the track and spirited away, it was not, as a matter of law, removed, and that, therefore, a summary direction to acquit must follow. Even if we assume that the court should have more fully defined these terms, its failure to do so is

10. CRIMINAL LAW: defining terms: necessity for: "remove."

not reversible error, in the absence of a proper instruction asking such definition; and the one offered is manifestly erroneous.

We see no force in the repeated and varied statement of the claim that the instructions of the court did not sufficiently define the meaning of the words "aider" and "abettor," and that the jury was left improperly to draw its own conclusion as to what an aider and abettor might be. Nothing in the citation from 12 Cyc. 616, or *People v. Bond*, 109 Pac. 150 (Calif.), differs from this position. Neither of these go beyond giving a definition of these terms. They do not hold that they must be defined, or defined in any particular way, or more fully than is done here.

VII. The giving of instructions number eleven and one-half and number four is assigned as error. We are favored with no argument on the point. We have examined the instructions and find that number four merely sets out the provisions of the statute under which the indictment was found, and sets them out correctly; and that number eleven and one-half is a correct statement of the care with which statements as to declarations alleged to have been made by witnesses out of court should be received, and how they should be weighed.

For the errors pointed out in Divisions II and IV of this opinion, the cause must be reversed.—*Reversed and Remanded.*

DEEMER, C. J., LADD and GAYNOR, JJ., concur.