THE STATE v. HARDIN AND HENRY.

1. **Criminal Law**: SELECTION OF TALESMEN: SHERIFF. Section 350 of the Code, providing that in certain cases the duties of the sheriff shall be performed by the coroner, applies to criminal as well as to civil cases. Accordingly when the accused shall file an affidavit to the effect that, by reason of partiality and prejudice, he believes the sheriff will not act fairly in the selection of talesmen, the duty of filling the jury should be taken by the court from the sheriff.

2. ———: EVIDENCE: IMPEACHMENT OF WITNESS. When one of two defendants testifies on behalf of the other, he is liable to impeachment as a witness, under the same conditions as he would be if he were not himself upon trial.

3. ———: ———: ALIBI. An *alibi* need not be established by such a preponderance of the evidence as to "fully satisfy" the jury; a bare preponderance, at most, is all that is required.

*Appeal from Van Buren District Court.*

FRIDAY, OCTOBER 5.

THE defendants were indicted for the crime of burglary. They were tried, convicted, and sentenced to the penitentiary for ten years. They appeal.

*Lea & Beaman, Hendershott & Son* and *Henry Clay Dean,* for appellants.

*J. F. McJunkin, Attorney General,* for the State.

DAY, CH. J.—I. Upon calling a jury for the trial of the cause, but ten jurymen belonging to the regular panel appeared. The court ordered the sheriff to fill up the jury from among the bystanders. Thereupon, and before any bystanders were summoned, the defendants filed an objection to the summoning of jurymen from the bystanders by the sheriff of Van Buren county. This objection was supported by an affidavit of the attorneys of defendants, that "the sheriff of Van Buren county, Iowa, viz: John W. Shane, is so identified with, and interested in this action, and has taken such an active part in working up

said case for the State, and in procuring evidence for the State, and in securing a conviction, and has thrown such obstacles in the way of the defendants obtaining justice, by using unfair means and partiality in securing their identification, that he will not act impartially in selecting jurors from among the bystanders, but will make such selection with reference to his interest in the same as aforesaid." It was conceded by defendants that said sheriff had no interest, pecuniary or by relationship. Thereupon the objections were overruled, and the defendants excepted. The sheriff filled the jury by calling two men from among the bystanders. Four jurors were challenged and excused for cause. The State then exercised five, and the defendants ten peremptory challenges, and to fill all the vacancies thereby caused said sheriff called men from among the bystanders. It is insisted that the court erred in overruling the objections to the sheriff. It is claimed that the objections should have been sustained under section 4396 of the Code, which is as follows: "If by reason of there being one or more juries impaneled, or for any other reason there should not remain any ballots undrawn, or if, in consequence of jurors being set aside, no jury can be obtained from the list of those returned by the sheriff for the trial of the issues, the court may order the sheriff, or if he be a party to, or interested in the cause, some other person, to summon jurors from the bystanders, or other persons, who shall be returned for the trial of the indictment."

Section 350 of the Code provides: "In all proceedings in the courts of record, where it appears from the papers that the sheriff is a party to the action, or where in any action commenced or about to be commenced, an affidavit is filed with the clerk of the court    *    *    *    stating a partiality, prejudice, consanguinity or interest, on the part of the sheriff, the clerk or court shall direct process to the coroner, whose duty it shall be to execute it in the same manner as if he were sheriff." The Revised Statutes of 1843, page 195, section 3, contain substantially the same provision. In *Harriman v. The State*, 2 G. Greene, 270 (281), the prisoner filed an affidavit objecting to the sheriff under this section, and

asking the appointment of an elisor. The cause was then continued to a special term, and at that term the sheriff acted. The court say: " It appears that the sheriff acted after the affidavit was filed, in summoning the panel of jurors for the special term, and also in selecting talesmen after the regular panel was exhausted. Had the prisoner or his counsel objected, this would have been palpably irregular, but we are advised by the bill of exceptions that it was done in the presence and hearing of the prisoner without objection on his part; that after the sheriff had summoned several talesmen, the counsel of the prisoner stated that they were unwilling to have the sheriff proceed any further, and requested the court to appoint some other person, and the court, with the consent of the prisoner, directed Robert Rinkade to act as an elisor, during the trial. The jury of twelve men who tried the cause were not objected to by either party before they were sworn, for any irregularity or informality in summoning any of the jurors. The objection does not appear to have been raised till after the verdict, when it was urged in support of the motion to arrest the judgment. This we regard as a sufficient answer to these objections." This case recognizes the doctrine that the section above quoted from the statute of 1843 applies to a criminal case, and that it renders improper the selecting of a jury by the sheriff, after the accused has filed an affidavit as provided in the statute. Upon principle it would seem that section 350 of the Code must apply to criminal cases. The language of the statute is general. It applies equally to every case in which a sheriff is called upon to act. It would be shocking to every notion of justice if a party, upon the trial of a question involving his liberty during his life, should not be allowed means for procuring a fair jury equal to those which are allowed him in a trial involving the most paltry sum of money. If section 350 does not apply to criminal cases, and the disqualifying interest referred to in section 4396 means a mere pecuniary interest, there is no provision of the statute disqualifying the accused's father, son or brother from selecting a jury for the trial of his cause. We feel satisfied that upon

the filing of the affidavit in question the court should have directed the coroner to act in the premises.

II. Upon the trial the defendants testified for each other. The State undertook to impeach the defendant, Henry, by

2. ——: evidence: impeachment of witness. showing that his general moral character was bad. The defendants insist that the State had no right to do this, as they had not first attempted to sustain the general moral character of Henry. The provisions of the Code upon the subject are as follows:

" Section 3636. Every human being of sufficient capacity to understand the obligation of an oath is a competent witness in all cases, both civil and criminal, except as herein otherwise declared."

" Section 3649. The general moral character of a witness may be proved for the purpose of testing his credibility."

" Section 4426. The rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided."

" Section 4556. The rules of evidence prescribed in the civil part of this Code shall apply to criminal proceedings as far as applicable, and as they are not inconsistent with this chapter, but nothing contained in this title shall render any person who, in any criminal proceeding, is charged with the commission of any public offense, competent or compellable to give evidence thereon for or against himself."

In *The State v. Gigher*, 23 Iowa, 318, it was held that where two or more defendants are jointly indicted and tried, each may use his co-defendant as a witness. It is now claimed that when such co-defendant is called as a witness, all the means of impeachment which may be employed in the case of an ordinary witness cannot be applied to him, because his character cannot be put in issue, unless he does it himself. Appellants rely upon *Fletcher v. The State*, 49 Indiana, 124. Whilst this case, at first view, appears to favor the position of appellants, yet it is really against it.

Section 242 of the civil Code of the State of Indiana provides that: " In all questions affecting the credibility of a witness, his general moral character may be given in evidence." The Act of March 10, 1873, gave to a defendant the

privilege of testifying in his own behalf. The defendant in this case testified for himself. The State then introduced a witness who testified that the general moral character of defendant was bad. In determining the case the court say: "It is conceded by counsel for appellant, that the State had the right to impeach the appellant, as a witness, by proving that his general character for truth and veracity was bad in the neighborhood of his residence; but it is very strenuously contended that the State had no right to prove what his general moral character was, to impeach him as a witness. The solution of this question is, whether the last clause of Sec. 242 of the civil Code," (the clause above quoted), "applies to the trial of a criminal cause." They held that it does not apply to the trial of a criminal cause, and that in such cause the only mode of impeachment was that recognized at common law, by proving the general reputation for truth and veracity. The court applied to the defendant the same rule that would have been applied to any other witness, for they say the evidence "was improper for the purpose of impeaching the appellant as a witness, for the reason that in a criminal cause a witness cannot be impeached by proof of general moral character." That it was not intended to allow the witness any special privileges because he was also defendant is apparent from the following language employed in the opinion: "In his capacity as a witness he is entitled to the same rights and is subject to the same rules as any other witness. In his character of defendant he has the same rights and is entitled to the same protection as were possessed and enjoyed by defendants in a criminal cause before the passage of the act in question. When we are considering the rights of the appellant in his character of defendant, we lose sight of the fact that he has the right to testify as a witness, and when his privileges as a witness are called in question, they should be decided without reference to the fact that he is a defendant also." There seems to have been no provision in the statutes of Indiana similar to our section 4426. Under this section the rules of evidence in civil cases are applicable to criminal cases, except as otherwise provided. It is not otherwise pro-

vided as to the impeachment of a witness. Hence, a witness may be impeached in a criminal, as in a civil cause. The court did not err in admitting the evidence complained of.

III. The defendants introduced evidence tending to establish an *alibi*. Respecting this, the court instructed as follows:

3. ——: ——:  "14. One of the defenses of the defendants is
alibi.          what is known in law as an *alibi*, which is simply the fact that at the time the crime with which they are charged was being committed they were at another and different place from that where the crime was committed.

"15. If you are fully satisfied that the defendants were at another place at the very time that the crime was committed, and that place was so far away that they could not have participated in the commission of the crime, that is a good defense.

"16. But the evidence must cover all the time during which the crime was committed. You should be fully satisfied by a preponderance of evidence that these defendants were at Henry's—the place where they claim to have been at the time the crime was committed—all the time while the crime was being committed, or at such time that they could not, with any ordinary exertion, have reached the place where the crime was committed."

There is not entire harmony in the decisions, as to the degree of proof of an *alibi*, which must be produced, in order to entitle a defendant to an acquittal. In *French v. The State*, 12 Ind., the trial court instructed the jury that: If he (the defendant) seeks to- prove an *alibi*, he must do it by evidence which outweighs that given for the State, tending to fix his presence at the time and place of the crime. This instruction was held to be erroneous. In *The State v. Waterman*, 1 Nev., 543 (552), the following instruction was held to be erroneous: "It is not sufficient to warrant an acquittal that he merely raised a reasonable doubt as to whether the *alibi* is established, but, as before stated, you must be satisfied of its truth by tesmony. If you believe from the testimony that the defendant, Waterman, at the time alleged, was in the city of Virginia, you must acquit him." In the course of a very lucid and

able opinion, the court say: " The rule of law and of common sense is, that where there is a reasonable doubt as to whether a prisoner has committed the act or offense with which he stands charged, he must be acquitted, whether that doubt arises from a defect in the evidence introduced by the State or from the evidence in rebuttal by the defendant." In the opinion of the writer, these cases present the only logical and consistent doctrine. For, if a reasonable doubt be created of the presence of the accused at the time and place of the commission of an offense which he could not commit when absent, a reasonable doubt is raised as to his guilt; and a reasonable doubt of guilt, all the authorities hold, entitles the accused to an acquittal. In the trial of Webster for the murder of Parkman, before the Supreme Judicial Court of Massachusetts, the following direction was given to the jury: " In the ordinary case of an *alibi*, when a party charged with a crime attempts to prove that he was in another place at the time, all the evidence tending to prove that he committed the offense tends in the same degree to prove that he was at the place when it was committed. If, therefore, the proof of the *alibi* does not outweigh the proof that he was at the place when the offense was committed, it is not sufficient." *Commonwealth v. Webster*, 3 Cush., 324. This doctrine was simply recognized and approved in *State v. Vincent*, 24 Iowa, 570; though the *alibi* sought to be established in that case was of the alleged deceased, and not of the prisoner.

For the purposes of this case, conceding the rule to be as there recognized, we are of opinion that the instructions in this case go beyond what that case authorizes. The most that can be claimed for that case is that the burden of establishing the *alibi* is cast upon the defendant, and the evidence sustaining it must outweigh the proof tending to establish its contradictory hypothesis. For this purpose a bare preponderance is sufficient. A preponderance of testimony is capable of producing very different degrees of conviction. It may be barely sufficient to turn the scale of probability in favor of the proposition which the mind is called upon to adopt. Where it so turns the scale, the fact which it favors is said to be proved by

a preponderance of evidence. From this point the evidence may gradually increase in intensity until it creates full satisfaction, which is not distinguishable from satisfaction beyond a reasonable doubt. In *State v. Ostrander*, 18 Iowa, 435 (459), in discussing the requirement that guilt must be established beyond a reasonable doubt, it is said: "The proof is sufficient if it establishes guilt to a moral certainty—such a certainty as firmly and fully convinces the understanding of jurors." In the fifteenth instruction the court directed the jury that the defense of *alibi* is a good one, if they were *fully satisfied* defendants were at another place when the crime was committed; and in the sixteenth they are told that they should be *fully satisfied* by a preponderance of evidence defendants were at Henry's when the crime was committed. These instructions require of defendants a higher degree of proof than that they should produce a preponderance of evidence of the *alibi*, or introduce evidence sufficient to outweigh the proof tending to establish the opposite. It is difficult to distinguish between the proof which defendants were required to produce, and proof establishing the *alibi* beyond a reasonable doubt. In this respect these instructions are erroneous.

Very many other alleged errors have been argued, but, as the case must be reversed for the reasons already assigned, and as the other questions may not arise or become material upon the retrial, we deem it unnecessary, at the present, to extend the opinion to the great length that would be necessary to give separate consideration to each of the questions discussed.

REVERSED