STATE OF IOWA, Appellee, v. TOM CONCORD, Appellant.

BURGLARY: Verdict—Sufficiency of Evidence. Evidence reviewed
1  and held sufficient to sustain a conviction for burglary.

CRIMINAL LAW: Demonstrative Evidence—Identification of Gun—
2  Sufficiency. An object cognizable by the senses is admissible only

when it is shown to have such relation to the facts in dispute as to afford reasonable grounds of belief respecting it.

PRINCIPLE APPLIED: A second-story hallway was reached by open stairways from the street in front and the alley in the rear. Burglars, one armed with a revolver, committed a burglary about 11:30 P. M., in a room adjoining the hallway. They fled into the hallway. The defendant passed down the back stairs and was arrested at the bottom thereof. After taking defendant to the police station, the officer returned and found a loaded 45-caliber revolver in the rear of the hallway, near a door casing. The victim of the robbery following the burglary testified that the revolver found "looked like" the revolver which the robber used during the robbery. Defendant and others acting suspiciously were seen in the hallway about an hour before the robbery. Defendant was on trial for the burglary, charged with being armed with a deadly weapon. *Held*, the revolver was not sufficiently identified to warrant its admission in evidence.

**WITNESSES: Impeachment—Inconsistent Statements.** Certain testimony held competent for impeaching purposes.

**CRIMINAL LAW: Evidence—Materiality and Competency—Non-Substantive Testimony on Impeachment—Effect.** Nonsubstantive testimony, properly brought out in the impeachment of a witness, bears on no issue but that of the *credibility of the witness assailed*. It cannot be used to bolster up some other issue in the case.

PRINCIPLE APPLIED: (Additional to No. 2) B, a witness for defendant, testified that he had never seen the revolver which the officer found, until it was shown to him at the station after defendant was arrested, and denied having said that the said revolver was his (B's), etc. The officer, as an impeaching witness, testified that, when B came to the station after defendant was arrested, he, the officer, showed the revolver to B, and that B then said *that he had seen a gun like it around the defendant's wagon.* *Held*, this testimony, while proper on impeachment, was nonsubstantive, not binding on defendant, and could not be considered as evidence tending to identify the revolver as the one possessed by the defendant.

**WITNESSES: Cross-Examination—Defendant in Criminal Case as Witness—Former Conviction of Felony.** The privilege accorded to the state to ask the accused in a criminal prosecution as to his former conviction of a felony must be exercised solely for the purpose of impeachment. It is improper to ask *and press*

*the question to an affirmative answer* if he has not been theretofore convicted of a *specified* felony, when the manifest purpose is, not to use the answer for impeaching purposes, but to show that defendant has been convicted of the identical offense for which he is then on trial. Not even the curative qualities of a correct instruction as to the applicability of such evidence will efface the error.

**CRIMINAL LAW:** Evidence—Alibi—Weight and Sufficiency—Burden of Proof. Alibi is recognized as a defense easily manufactured, and it is proper to tell the jury to scan the testimony with care and caution. The burden of proof is on the accused to establish this defense by a preponderance of the evidence; but, in order that the accused may have the benefit of *all* the testimony on the final question of ''guilty'' or ''not guilty'', the approved practice is to substantially instruct the jury that, after considering all the evidence, including that pertaining to the alibi, they should acquit if they have a reasonable doubt as to defendant's guilt.

**BURGLARY:** Trial—Instructions—Issue as to Accused's Being Armed. An allegation in an indictment that the accused was armed with a deadly weapon at the time of the commission of a burglary should be covered by a proper instruction, there being evidence to support the allegation.

**CRIMINAL LAW:** Trial—Deliberations of Jury—Cautionary Instructions. Cautionary instructions, urging the jurors to harmonize their differences and agree on a verdict, are out of place in the absence of a substantial reason therefor—for instance, where it is evident that the jury is working to no purpose. Giving such instruction when the jury had been out only four hours, while not necessarily reversible error, is deprecated.

*Appeal from Polk District Court.*—HON. W. S. AYRES, Judge.

TUESDAY, NOVEMBER 16, 1915.

DEFENDANT was indicted for the crime of breaking and entering a dwelling house, while armed with a deadly weapon, with intent to commit larceny. On trial, he was convicted of the offense charged and he appealed to this court.—*Reversed* and *Remanded.*

*J. W. White,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for appellee.

DEEMER, C. J.—I. The accused is charged with breaking and entering the dwelling of one Sol Neuderman. The indictment alleges that he was armed with a deadly weapon and that he did the breaking with intent to commit larceny. The testimony discloses that Neuderman was the owner and manager of a moving picture show located at East Sixth Street and Grand Avenue in the city of Des Moines. The picture show occupied the lower floor of a two-story building, the second floor being used for offices and living apartments by other people. On Sunday, August 2, 1914, Neuderman, who was an unmarried man, moved into one of the apartments on the second floor of the building. On the night of that day, he closed his show at about 10:45 P. M., and placing the receipts of that day and of the previous Saturday night in a canvas money sack (the banks being closed from Saturday afternoon until Monday morning), he went to his room on the second floor of the building and, leaving the money in his room, went down to the corner of East Fifth and Locust Streets, two blocks away, to a lunch counter. There he ate a lunch, and when he had finished, returned to his room and retired for the night. Shortly after retiring, he heard some person, or persons, in the upstairs hallway, and after inquiring who it was, and receiving no response, he got up and closed a door to his room, which had been left open. Shortly thereafter, someone broke open a screen door to the room and also broke the glass in the door to Neuderman's room, in which he (Neuderman) was sleeping, and entered the room. We here quote from the record showing what then occurred:

1. BURGLARY: verdict: sufficiency of evidence.

"I run to my back window and hollered in the street, 'Robbers, help'; and he come to me and I was laying in bed close to the window and he put his arm around my neck and wouldn't let me holler, and says, 'Give me your money'. He had a gun which I seen, when he pulled it higher. He says, 'Give me the money quick, or your life'. He had in his hand

a gun. It looks like this gun. They found it afterwards and I seen it again. I tried to get him by the neck as quick as I could reach him a little. I turned over, and the lady who was screaming and hollering and his partner that was there run away, and he commenced to run out to the back door down the hall towards the west. I did not follow him. I next saw him when the policeman brought him around upstairs.''

The state claims that defendant is the person who did the breaking and entering, while defendant denied that he was the guilty party, and also introduced testimony tending to show an alibi. Neuderman identified the defendant as the man who assaulted him, and a woman who had apartments on the same floor with Neuderman identified defendant as one of the men whom she saw about 10:30 o'clock in the evening in the hallway, acting in a suspicious manner. The breaking was done somewhere between 11:15 and 11:30 P. M.; and a policeman, who was called to quell a fight at East Sixth Street and Grand Avenue, saw defendant on the back stairs of the building, or on the platform thereof, about 11:30 P. M., and then arrested him. He was taken around to the front and upstairs and there identified by Neuderman, and by the woman who saw him in the hall. After taking defendant to the police station, the officer returned to the building, went upstairs, and there, near a door-casing in the rear of the hallway, he found a 45-caliber revolver, which was loaded. The revolver was found back of the suite of rooms occupied by Neuderman and some distance away from his room. Another policeman, who had been called to quell a fight in the alley back of the building where the breaking occurred, was present when defendant was arrested, and he, with the first named officer, arrested the defendant as he was seen on the back stairs of the building. The revolver, which the policeman identified as the one found by him in the hallway, was offered and received in evidence over defendant's objection.

The only testimony, down to this point, showing that defendant ever had this revolver, is that it was found in the hallway at a place past which the defendant retreated, if he was the guilty man. Defendant offered testimony to show that, on the night in question, between 10:00 and 11:00 o'clock P. M., he was at Berlovich's horse barn at 223 East Fifth Street, where he then worked, and that thereafter he was with some parties who were engaged in a sort of running fight from the corner of East Fifth and Walnut Streets, north to the corner of Locust Street and again near East Sixth and Grand Avenue, and that the fighting did not close until between 11:00 and 12:00 o'clock,—''right around between 11:20 and 11:30 P. M.'', as one of the witnesses expressed it.

The jury evidently did not believe the testimony relating to the alibi, and there was enough tending to show defendant's guilt to justify the verdict returned. Many errors are relied upon for reversal, but they relate chiefly to rulings on testimony and to the instructions given and omitted.

II. It is claimed that the revolver should not have been admitted in testimony without more of a showing than is so far recited. The hallway in which it was found led down to the street in front and to the alley in the rear, and there were no doors either at the foot or the top of either stairway. There was no testimony as to how long the revolver had been there, and nothing in the record quoted, save a mere inference, that the defendant ever had the revolver in his possession. The state relies, however, upon some further testimony to which we shall now refer. Berlovich, the proprietor of the horse barn where defendant worked just before the crime was committed, was a witness for defendant. In his examination in chief, he endeavored to account for the defendant down until nearly 11:00 o'clock P. M. He was also presented with the revolver and asked if he had ever seen it before, to which he responded that he had not. He was then asked if he ever saw that gun in the possession of the defendant, and

2. CRIMINAL LAW: demonstrative evidence: identification of gun: sufficiency.

on the state's objection he was not permitted to answer. On cross-examination the following record was made:-

"I say I never saw this gun before. It was on Monday morning that I first heard of Mr. Concord's arrest, and I went down to the police station. Officer Jackson was there. I said, 'I see they arrested Tom Concord', and he had brought some big gun, and I says, 'I have got an old gun down in the office, a long barreled gun and maybe it *is* my gun.' And Jackson showed me his gun and I said, 'This is not my gun.'" .Q. "Now, isn't it a fact that in that conversation with Chief Jackson at that time and at that place you said to him this, in substance, when he showed you the gun. 'This is my gun; the son of a gun's stole my gun.'" A. "No, sir. I never had a gun like that in my life." Q. "Is this statement true or false? Did you or did you not say that?" A. "I never did."

<div style="margin-left:2em; font-size:smaller;">3. WITNESSES: impeachment: inconsistent statements.</div>

Officer Jackson was called by the state on rebuttal and the following is a reproduction of the record then made:

"I recall the time of Tom Concord's arrest. It was in the forepart of August. I recall having a conversation with Barney Berlovich at police headquarters shortly after that." Q. "I will ask you to state, if during that conversation, Barney Berlovich said this or this in substance: 'That gun came from my barn.'" (Objected to as incompetent, irrelevant and immaterial, the defendant not being shown present, and therefore any conversation he had with Barney Berlovich, unless the defendant was present, would not be binding upon him and further there is no proper foundation laid for such testimony. Objection overruled and exception.) A. "Shall I tell what the conversation was?" Q. "Yes, sir." A. "I said this: I showed him the gun. He said he believed it was his gun, Berlovich's. I asked him if it was the gun and he said that he had seen one like it around Concord's wagon. (Objected to by the defendant for all the foregoing reasons and as not responsive, and moved to strike the answer for the

same reasons. Objections overruled and motion denied and exception.)''

<div align="center">CROSS-EXAMINATION.</div>

Q. ''He simply said he believed it was his gun?'' A. ''Barney said first he believed it was his gun and I asked him if it was his gun, and that was the answer, that he had seen one like it around Concord's wagon.'' Q. ''He did not say that he had seen that gun?'' A. ''He said he had seen one like it.'' Q. ''When was this?'' A. ''I think that was the next morning after this happened, the next day.'' Q. ''Where was it?'' A. ''Upstairs in the detective's office.''

We are disposed to think that this testimony given by Officer Jackson was competent for the purpose of impeaching Berlovich; but it was not substantive in character and not binding on the defendant and added nothing

**4. CRIMINAL LAW : evidence : materiality and competency : nonsubstantive testimony on impeachment : effect.**

to the state's testimony toward identifying the revolver as one in the possession of the defendant when he did the breaking. As the revolver was not shown to have been in the possession of the defendant at any time or to have been in his possession when the burglary was committed, it should not have been received in evidence. *State v. Hossack,* 116 Iowa 194.

III. Defendant was a witness in his own behalf, and the county attorney, in cross-examining him, made this record:

Q. ''Have you ever been convicted of a felony?'' A. ''I plead guilty to a felony.'' Q. ''What was the

**5. WITNESSES : cross-examination : defendant in criminal case as witness : former conviction of felony.**

charge against you?'' (Objected to as immaterial. Objections sustained and exception.) Q. ''You plead guilty and were convicted of burglary, were you not?'' A. ''I was convicted of a felony.'' (Objected to as incompetent, irrelevant and immaterial. Objection sustained and exception.) Q. ''You were convicted of the crime of burglary before?'' (Objected to as incompetent, irrelevant and immaterial. Ob-

jection overruled and exception.)   A. "I was convicted of a felony."   Q. "Will the reporter read the question?"   (Reporter read the question.)   A. "Yes, sir."

The defendant being a witness on his own behalf, it was competent to show, as affecting his credibility, that he had previously been convicted of a felony.   Code Sec. 4613.   The same statute provides that no other proof is competent except the record thereof.   We held, in *State v. Carter*, 121 Iowa 135, that practically similar inquiries of a witness were proper. The writer is disposed to think that, as applied to such facts as are here shown, the rule should not be adopted.   Counsel, in propounding the question, was evidently not intending to use the answer for impeaching purposes, but to show that he (defendant) had theretofore been convicted of a like offense. It was not admissible for that purpose, and the majority of the court as now constituted are of the opinion that, as this was the manifest purpose of the inquiry, it was error to press the question to an answer.   It is true that the court correctly instructed as to the purpose for which this testimony was admitted and as to how it should be considered by the jury; but the statute attempts to safeguard the defendant's rights in saying that, on cross-examination of a defendant in a criminal case, the state shall be strictly confined thereon to matters testified to in the examination in chief.   Code Sec. 5485.   Of course he is subject to impeachment as any other witness; but the state, in conducting the cross-examination, should be confined strictly to matters of impeachment and not, under cover thereof, be permitted to inject prejudicial matter.

IV. The instruction with reference to alibi is challenged. It was in accord with the rule announced in

6. CRIMINAL LAW: evidence: alibi: weight and sufficiency: burden of proof.

*State v. Blunt,* 59 Iowa 468; *State v. Rowland,* 72 Iowa 327; *State v. Watson,* 102 Iowa 651; *State v. Worthen,* 124 Iowa 408, and many other cases, and we see no reason to change the rule.

V. There was an issue as to whether defendant was armed with a deadly weapon at the time he committed the burglary. If he was so armed, this was an aggravation of the offense and called for a heavier punishment than if he were not so armed. The trial court did not submit to the jury the question as to whether or not he was so armed, nor was it specially requested to make a finding on this point.

7. BURGLARY: trial: instructions issued as to accused's being armed.

The verdict was "guilty" of the offense charged, which, on its face, was a finding that the defendant was so armed. In view of the testimony as to the revolver found in the hall and the inference which the state intended the jury to draw therefrom, we think this matter should have been covered by an instruction.

VI. The cautionary instructions given by the trial court within four hours and a few minutes after the jury retired (part of the time being occupied by the noon meal), after being advised that the jury stood eleven to one, were of doubtful propriety, if not erroneous. We do not intend to question the rule announced in *State v. Richardson*, 137 Iowa 591,

8. CRIMINAL LAW: trial: deliberations of jury: cautionary instructions.

*Armstrong v. James & Co.*, 155 Iowa 562, and other like cases; for we believe the rule a wholesome one, proper to be given in a case where a jury is evidently working to no purpose. But such an instruction should be bottomed on some reason, and given only where the action of the jury seems to call for such a caution. Here, no good reason appears; and while we would not reverse on this ground alone, we desire at this time to express our thought that it is better to omit such directions, save where it is manifest that the jury is not endeavoring to do its full duty. For the errors pointed out, the judgment must be and it is reversed and the cause remanded for a new trial.—*Reversed* and *Remanded*.

LADD, GAYNOR and SALINGER, JJ., concur.