Gale H. JOHNSON, Appellant,

v.

John E. BENNETT, Warden, Iowa State
Penitentiary, Appellee.

No. 18744.

United States Court of Appeals
Eighth Circuit.

July 17, 1969.

Ronald L. Carlson, Iowa City, Iowa, for appellant.

William A. Claerhout, Asst. Atty. Gen. of Iowa, Des Moines, Iowa, for appellee.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES, BLACKMUN, MEHAFFY, GIBSON, LAY, HEANEY, and BRIGHT, Circuit Judges, sitting en banc.

BLACKMUN, Circuit Judge.

This habeas corpus case, instituted by Gale H. Johnson, an Iowa state prisoner now 64 years of age, and primarily concerning the frequently contested but consistently approved Iowa alibi instruction, is before us a second time.[1]

---

1. On October 20, 1961, in a prior federal habeas proceeding, this court, without opinion, denied Johnson's application for a certificate of probable cause. His ensuing petition for certiorari was denied. Johnson v. Bennett, 371 U.S. 831, 83 S. Ct. 53, 9 L.Ed.2d 68 (1962).

Johnson is serving a life sentence[2] in the Iowa penitentiary as a result of his conviction by a jury of murder in the second degree, as defined by § 12912 of the 1939 version of the Iowa Code. The victim, a police officer, was shot on the early morning of May 27, 1934, as he was investigating a burglary of a Burlington store. On appeal Johnson's conviction was unanimously affirmed by the Supreme Court of Iowa. State v. Johnson, 221 Iowa 8, 264 N.W. 596, 267 N.W. 91 (1936).

Judge Oscar Hale, who presided at Johnson's 1934 state trial, gave the jury instructions which consume 18 pages of the transcript. Those instructions contain numerous references, at least 13 by our count, to the effect that the state had the burden of establishing the material charges of the indictment, including time and place, beyond a reasonable doubt, that "the innocence of the defendant will be presumed", that the jury's determination is to be made in the light of all the evidence, and the like. But they also contain the particular alibi instruction now challenged.[3] The defense, in its post-trial motion, excepted to this instruction on the grounds, among others, that it "does not correctly state the

law with reference to the defense of alibi." This was overruled by Judge Hale.

On appeal the Supreme Court of Iowa said, 264 N.W. at 602:

"An alibi is an affirmative defense; the burden of proof is upon the person setting up an alibi to prove it by a preponderance of evidence. Of course, if the whole record raises a reasonable doubt of his guilt, he may be found not guilty. The instructions in this case in regard to the alibi did not go as far as such instructions many times rightfully go. The court might very well have told the jury, in addition to what he said about an alibi, that the evidence of an alibi should be scanned with caution; that it is a defense easily manufactured."

As noted above, this language is that of a unanimous court.

Johnson's present application for federal habeas relief, after denial by the district court, came before a panel of this court in 1967. Three specific due process issues were raised: (1) the use of allegedly false evidence at Johnson's state trial; (2) the claimed purposeful suppression by the state of impeachment testimony by a defense witness named

2. We are now advised, however, by brief and at the oral argument, that on December 11, 1968, the Governor of Iowa commuted the petitioner's life sentence to a 90 year term. This required the prior presentation of the matter to the Board of Parole and the Board's advice. Iowa Code § 248.6 (1966). The commutation made Johnson eligible for parole. Iowa Code § 247.5 (1966).

3. "16. Evidence has been admitted on behalf of the defendant of what is known as an alibi, which means that the defendant at the time that the alleged murder is charged to have been committed, was at another place so that he could not have committed the same. You are instructed that such a defense is proper and legitimate as any other, and you are also instructed that you scan the proof of alibi with care and caution, and all the evidence upon this point both for and against this claim of alibi should be scrutinized with care and carefully considered by the jury.

"The burden is upon the defendant to prove this defense by a preponderance of the evidence, that is, by the greater weight or superior evidence. The defense of alibi to be entitled to be considered as established must show that at the very time of the commission of the crime the accused was at another place so far away, or under such circumstances that he could not with ordinary exertion have reached the place where the crime was committed so as to have committed the same. If by a preponderance of the evidence the defendant has so shown, the defense must be considered established and the defendant would be entitled to an acquittal. But if the proof of alibi has failed so to show, you will not consider it established or proved. The evidence upon that point is to be considered by the jury, and if upon the whole case including the evidence of an alibi, there is a reasonable doubt of defendant's guilt, you should acquit him."

Orsucci, since deceased; and (3) the impropriety, generally and constitutionally, of the alibi instruction which, it was argued, served to shift the burden of proof as to the alibi to the defendant and thus to destroy the fundamental presumption of innocence. Our panel, after careful study and with a detailed opinion, decided each of these issues, as well as a general claim of denial of a fair trial, adversely to the petitioner. Johnson v. Bennett, 386 F.2d 677 (8 Cir. 1967).

Our panel pointed out that this court, 50 years before, had reversed a *federal* conviction because of the use of such an alibi instruction, Glover v. United States, 147 F. 426, 430–433 (8 Cir. 1906); that the Iowa court, although at times sharply divided, had consistently upheld an instruction of this type; that, when Johnson's case was tried in 1934, over three decades ago, the instruction "had the full backing of the Iowa Supreme Court"; that Johnson's conviction "was finally adjudicated long before the [United States] Supreme Court determined federal constitutional rights guaranteed by the first ten amendments are to be applied to state proceedings by reason of the Fourteenth Amendment"; that the defendant, at his trial and on his appeal, had made no challenge to the instruction on constitutional grounds; that there was "little doubt that such challenge, if then made, would have been rejected"; and that it did not believe that the present challenge, even if "entitled to be upheld under present day standards, would be given retroactive application to the 1934 conviction."

After the panel's decision Johnson filed a petition for certiorari with the Supreme Court of the United States. Certiorari was granted. 390 U.S. 1002, 88 S.Ct. 1247, 20 L.Ed.2d 102.

Prior to the argument of Johnson's case in the Supreme Court, the Iowa alibi instruction's due process aspect was once again presented to this court, this time by Ronald Maurice Stump, another state prisoner seeking federal habeas relief. Stump had been convicted of second degree murder in 1961 and had received and was serving a sentence of 75 years. His sole defense was an alibi. In his state trial the jury had been instructed that the defendant must establish the alibi by a preponderance of the evidence but that the burden of proof beyond a reasonable doubt as to the case as a whole was on the state. Stump's conviction was affirmed by the Iowa Supreme Court by a divided (5–3) vote. State v. Stump, 254 Iowa 1181, 119 N. W.2d 210 (1963). Certiorari was denied. 375 U.S. 853, 84 S.Ct. 113, 11 L. Ed.2d 80.

In his federal habeas petition Stump raised the due process issue with respect to the alibi instruction and also questioned Iowa Code § 777.18 in its application to him. The district court denied the petition. We heard the case en banc and by a divided vote concluded that, in Stump's case, the Iowa rule as to the burden of proof on the alibi reached the level of constitutional error and was violative of the 14th Amendment's due process clause. Stump v. Bennett, 398 F.2d 111 (8 Cir. 1968). Judge Lay, in speaking for the majority of five judges, cited Morrison v. California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934), and other cases and distinguished the defense of alibi from the plea of insanity considered in Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). He necessarily made reference to the panel decision in Johnson v. Bennett and to the then pending grant of certiorari in *Johnson's* case and observed:

"The *Johnson* case concededly has some factual distinctions from the present one. Also significant is the fact that in the *Stump* case, unlike *Johnson*, counsel has carefully preserved by objections throughout the trial and appellate procedures his argument as to the unconstitutionality of the instruction." 398 F.2d at 122–123.

The three judges who had comprised the *Johnson* panel dissented in *Stump*. In two separate opinions, 398 F.2d at

123 and 128, they (a) agreed that alibi is not an affirmative defense; (b) agreed that an instruction placing the burden on the defendant to establish alibi by a preponderance of the evidence is erroneous; (c) observed that "due process permits the state a wide range in developing rules of procedure and evidence"; (d) felt that *Stump's* instructions, "when * * * fairly considered as a whole", gave him "the full benefit of the presumption of innocence"; (e) noted that "on at least twelve different occasions" the Stump jury was told that it "was required to determine beyond a reasonable doubt that defendant had committed the offense before it could find him guilty"; (f) said that Leland v. Oregon "affords strong support for an affirmance here"; (g) characterized the alibi evidence in Stump's case as "extremely weak"; and (h) stated that the right given the state to retry Stump was of doubtful value in view of the passage of 7 years since the commission of the crime.

Four months later Johnson's case was argued in the Supreme Court. The Court soon issued its opinion, per curiam, but with Mr. Justice Black dissenting without other comment, vacating this court's panel decision and remanding the case "for reconsideration" by us "[i]n view of" our en banc holding in *Stump*. Johnson v. Bennett, 393 U.S. 253, 89 S.Ct. 436, 21 L.Ed.2d 415 (1968). On the same day the Supreme Court, with three Justices voting otherwise, denied certiorari in Stump's case. 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968).

In the light of this history we felt it advisable to have our reconsideration of Johnson's case en banc with supplemental briefing and reargument. This has been done.

We turn initially to the Iowa decisions.

We have read with interest the many Iowa cases where the alibi instruction was under challenge. The very number of the cases, and the constant resubmission of the issue to the court, indicate the concern which the instruction has occasioned. Although the Iowa court has been unanimous in opinion in a large majority of its cases, the court was split in its early opinions and again has been split in the most recent ones. In the intervening unanimous opinions there are, nevertheless, some indications of struggle in the decisional process.

Apparently the source case is State v. Vincent, 24 Iowa 570 (1868). The charge was murder. The defense asserted an alibi and, as well, that the victim was not the person named by the state. The court placed the burden of proof as to both issues upon the defense. "These defenses, then, must be sustained by the prisoner, and the evidence necessary to sustain either of them must be sufficient to outweigh the proof tending to establish its contradictory hypothesis." 24 Iowa at 578. In the next two cases, both resulting, incidentally, in reversals of convictions, minority disagreement with the Vincent rule is expressed. State v. Hardin, 46 Iowa 623 (1878); State v. Northrup, 48 Iowa 583 (1879). Then in State v. Red, 53 Iowa 69, 4 N.W. 831, 832–833 (1880), the court stated that the defense was required to prove an alibi by a preponderance of the evidence but that this "does not abrogate the doctrine of reasonable doubt" which "extends to all the evidence." See, also, State v. Kline, 54 Iowa 183, 6 N.W. 184 (1880).

The Iowa court came clearly to grips with the problem in the frequently cited case of State v. Hamilton, 57 Iowa 596, 11 N.W. 5 (1881). There. the *Vincent* doctrine, by a 3–2 vote, was held to be "the settled law of the state." The dissent, pp. 6–7, observed that reasonable doubt may be raised by evidence "which could not be said to preponderate"; that "[b]oth rules [preponderance as to alibi and reasonable doubt overall] cannot be correct, because they are inconsistent with each other"; that "[n]o jury can follow both"; that the majority position "requires a modification of the rule as to the presumption of innocence"; and that the majority are mis-

led by the suspicion which attaches to evidence of an alibi. State v. Krewsen, 57 Iowa 588, 11 N.W. 7 (1881), decided the same day, approved the instruction on the ground that the case was controlled by *Hamilton*. A division in the court's vote is also apparent in State v. Reed, 62 Iowa 40, 17 N.W. 150, 151 (1883) (3 to 2); State v. Rivers, 68 Iowa 611, 27 N.W. 781, 784 (1886) (3 to 2); and State v. Maher, 74 Iowa 77, 37 N.W. 2, 4 (1888) ("a majority").

After *Hamilton* was decided in 1881 and with the exception of the divisions noted in the *Reed, Rivers* and *Maher* cases just cited, there followed a long period of approximately 80 years during which the Iowa court consistently and repeatedly approved the alibi instruction with its allocation of burden of proof. We cite in the footnote the numerous cases which we have found which approve the instruction generally or by inference, by flat holding or by dictum.[4] In certain of these cases, however, some discomfort with the situation is evident. Thus in State v. Matheson, 130 Iowa 440, 103 N.W. 137, 141 (1905), the court characterized its approval of the instruction as "a somewhat anomalous rule." In State v. Thomas, 135 Iowa 717, 109 N.W. 900, 902 (1906), writ of error dismissed, 215 U.S. 591, 30 S.Ct. 407, 54 L. Ed. 340, the court referred to its holding as "in some respects peculiar to this state." In State v. Bosworth, 170 Iowa 329, 152 N.W. 581, 586 (1915), the court observed, "It is none too clear what is meant by the rule * * *." And in State v. Wagner, 207 Iowa 224, 222 N. W. 407, 410, 61 A.L.R. 882 (1928), it observed, "We have not seen a satisfactory rationale of the law of alibi and shall not undertake to formulate one." [5]

4. State v. Hemrick, 62 Iowa 414, 17 N.W. 594 (1883); State v. McCracken, 66 Iowa 569, 24 N.W. 43 (1885); State v. Fry, 67 Iowa 475, 25 N.W. 738 (1885); State v. Sutton, 70 Iowa 268, 30 N.W. 567 (1886); State v. Rowland, 72 Iowa 327, 33 N.W. 137 (1887); State v. Johnson, 72 Iowa 393, 34 N.W. 177, 181 (1887); State v. Maher, 74 Iowa 82, 37 N.W. 5 (1888); State v. Hatfield, 75 Iowa 592, 39 N.W. 910, 912 (1888); State v. Van Winkle, 80 Iowa 15, 45 N.W. 388, 390 (1890); State v. Sepult, 81 Iowa 40, 46 N.W. 748, 749 (1890); State v. Hemm, 82 Iowa 609, 48 N.W. 971, 973 (1891); State v. Beasley, 84 Iowa 83, 50 N.W. 570 (1891); State v. Watson, 102 Iowa 651, 72 N.W. 283, 284 (1897); State v. McGarry, 111 Iowa 709, 83 N.W. 718, 719 (1900); State v. Hogan, 115 Iowa 455, 88 N.W. 1074 (1902); State v. Worthen, 124 Iowa 408, 100 N.W. 330, 332 (1904); State v. Thomas, 135 Iowa 717, 109 N.W. 900, 902 (1906), writ of error dismissed, 215 U.S. 591, 30 S.Ct. 407, 54 L.Ed. 340; State v. Nugent, 134 Iowa 237, 111 N.W. 927, 929 (1907); State v. Richardson, 137 Iowa 591, 115 N.W. 220, 221 (1908); State v. Whitbeck, 145 Iowa 29, 123 N.W. 982, 986 (1909); State v. Lindsay, 152 Iowa 403, 132 N.W. 857, 859 (1911) (dissenting opinion); State v. Gulliver, 163 Iowa 123, 142 N.W. 948, 955–956 (1913); State v. Harrison, 167 Iowa 334, 149 N. W. 452, 454 (1914); State v. Bosworth, 170 Iowa 329, 152 N.W. 581, 586 (1915); State v. Leete, 187 Iowa 305, 174 N.W. 253, 254 (1919); State v. O'Brien, 188 Iowa 165, 175 N.W. 769 (1920); State ex rel. McKeever v. Carey, 188 Iowa 1308, 177 N.W. 522, 528 (1920); State v. Wrenn, 194 Iowa 552, 188 N.W. 697, 700 (1922); State v. Shields, 195 Iowa 1360, 192 N.W. 521, 524 (1923); State v. Debner, 205 Iowa 25, 215 N.W. 721, 722 (1927); State v. Bird, 207 Iowa 212, 220 N.W. 110, 112 (1928); State v. Parsons, 206 Iowa 390, 220 N.W. 328, 330 (1928); State v. Wagner, 207 Iowa 224, 222 N.W. 407, 410, 61 A.L.R. 882 (1928); State v. Johnson, 211 Iowa 874, 234 N.W. 263, 265 (1931); State v. Sampson, 220 Iowa 142, 261 N.W. 769, 770 (1935); the present petitioner's case, State v. Johnson, 221 Iowa 8, 264 N.W. 596, 602, 267 N.W. 91 (1936); State v. Dunne, 234 Iowa 1185, 15 N.W.2d 296, 299–300 (1944); State v. Baker, 246 Iowa 215, 66 N.W.2d 303, 310 (1954); and State v. Post, 255 Iowa 573, 123 N.W.2d 11, 18 (1963), where we have the first reference to the 14th Amendment's due process clause.

5. Indeed the district judge in the present federal habeas proceeding felt that the instruction embraced "to some extent, an inconsistency" and observed that the instructions "are still somewhat confusing" and "may not be a model of clarity." Wigmore has characterized the Iowa rule as "peculiar." 9 Wigmore on Evidence § 2512, n. 3, p. 416 (3d ed. 1940).

It is of interest to note, too, that the Iowa court frequently struggled in these cases with the subsidiary question as to whether evidence was of an alibi, which would then justify the instruction, or was merely in opposition to the state's primary case. See, for example, State v. Steffen, 210 Iowa 196, 230 N.W. 536, 538, 78 A.L.R. 748 (1930), and State v. Dunne, 234 Iowa 1185, 15 N.W.2d 296, 300 (1944). The issue was often also confused by the precautionary or disparagement instruction customarily given in Iowa to alibi evidence.[6]

The most recent Iowa cases again reveal a split vote. In State v. Stump, supra, 254 Iowa 1181, 119 N.W.2d 210 (1963), the court divided 5 to 3 with a vigorous dissent championing the dissenting point of view expressed in 1881 in *Hamilton*. In State v. Agee, 257 Iowa 1345, 136 N.W.2d 419, 421 (1965), the opinion observed, "A majority * * * of this court are still of the view * * * the instruction as given is correct." In State v. LaMar, 260 Iowa 957, 151 N.W.2d 496 (1967), the vote was 6 to 3 with the writer of the majority opinion stating, p. 504, that *Stump* for him was controlling but that had he been a member of the court at the time of that decision he would have joined the dissent there. In State v. Carter, Iowa, 161 N.W.2d 722 (1968), the vote was 5 to 4 with the majority suggesting, p. 727, that trial courts "omit from the alibi instruction that part which puts the burden on defendant of proving an alibi by a preponderance of evidence." However, the court's "long established rule on alibi" was not overruled "at this time." Finally, in State v Galloway, Iowa, 167 N.W.2d 89, decided April 8, 1969, the court referred to the rulings by this court and by the United States Supreme Court in *Stump*

and in *Johnson* and said, p. 96, "Pursuant to these pronouncements and mandates by the United States courts the alibi instruction can no longer be approved." That appellant's murder conviction was reversed and the case was remanded. Two justices concurred in the result.

It is thus apparent that the Iowa court has continuously struggled with the alibi instruction so frequently employed by the trial courts of the state. The division among the members of the Supreme Court was clear and bitter in the earlier cases of 80 years ago. The division has been clear and bitter in the cases decided during the last 6 years.

The Iowa ruling seems to have been based on the notion, apparent from certain of the opinions, that alibi, as insanity, is an affirmative defense or excuse rather than a part of the prosecution's own case. State v. McCumber, 202 Iowa 1382, 212 N.W. 137 (1927); State v. Rourick, 245 Iowa 319, 60 N.W.2d 529, 531 (1953); State v. Stump, supra, 119 N.W.2d at 218. The dissent in *Stump*, 119 N.W.2d at 228–229, points out the logical difficulty with this.

■ With this as background, a majority of this court now concludes that there is sufficient merit in Johnson's claim of deprival of constitutional due process as to require the honoring of his application for federal habeas relief. We so conclude because:

1. As noted above, we recognized in *Stump*, 398 F.2d at 122, that Johnson's case "concededly has some factual distinctions" from Stump's. Further, the dissent in *Stump*, 398 F.2d at 127, characterized the evidence in support of Stump's alibi as "extremely weak." Now that the Supreme Court's remand for reconsideration compels us to take the measure of these factual differences

---

6. See State v. Blunt, 59 Iowa 468, 13 N.W. 427, 428 (1882); State v. Rowland, supra; State v. Watson, supra; State v. Worthen, supra; State v. Concord, 172 Iowa 467, 154 N.W. 763, 765 (1915); State v. Menilla, 177 Iowa 283, 158 N.W. 645, 654 (1916); State v. Whitbeck, supra; State v. Leete, supra; State v. Cartwright, 188 Iowa 579, 174 N.W. 586, 587 (1919); State v. Banoch, 193 Iowa 851, 186 N.W. 436, 437 (1922); State v. Wrenn, supra; State v. Bird, supra; State v. Wagner, supra; State v. Dunne, supra; State v. Stump, supra.

between the two cases, we hold that they possess no legal significance.

2. Our conclusion and holding in *Stump*, that his Iowa alibi instruction was violative of constitutional due process in that it shifted the burden of proof to him and deprived him of the presumption of innocence, and that its use was not harmless error, necessarily control Johnson's case. Indeed, our judges who dissented in *Stump* even considered Stump's instructions "somewhat stronger with respect to preserving * * * constitutional rights" than Johnson's instructions. 398 F.2d at 126. That Johnson's prosecution gave the alibi rule great emphasis and full power is evident from its closing argument to the jury.[7]

■■■ 3. Although, as far as we can tell from the somewhat restricted record now available of the 1934 state trial, no challenge was made by Johnson's defense to the alibi instruction on specific constitutional grounds, the instruction nevertheless was vigorously challenged.[8] We have noted above that the instruction was argued to and passed upon by the Supreme Court of Iowa. 264 N.W. at 602. Thus the propriety of the instruction was strongly contested at trial and on the state appeal. We recognize that even a constitutional claim, under appropriate circumstances, may be the subject of waiver in the state courts. *Fay v. Noia*, 372 U.S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Although, in contrast, it may be true that the defense in *Stump* at all stages preserved constitutional objections to the instruction, we could not hold, in good conscience, that Johnson, who so vigorously challenged the alibi instruction throughout his state proceedings 35 years ago, knowingly waived what the Constitution guaranteed to him. In *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), a case emanating from the Eighth Circuit, the Supreme Court very recently cautioned us that the failure to raise a constitutional claim on direct appeal does not deprive a federal post-conviction court of power to adjudicate the merits of that constitutional claim. In footnote 3 of the opinion, 394 U.S. at

7. At the state trial the county attorney's closing argument included the following:
   "It is up to the defense, the burden of proof of alibi, and they have to prove that by a preponderance of the evidence to you. The Court will instruct you that they have to prove the alibi. Are you satisfied that these seven unrelated witnesses, citizens of your community, respected men and women, are mistaken? That they are lying, as Mr. Finley says. Are you going to say that they are liars, and that is what your verdict will say by acquittal. What are you going to say?
   "You know, you can consider lack of proof too, folks, when you are accused of a crime, and you didn't do it, would you sit quiet while witness after witness pointed you out? If you had been at another place at the time, would you rise to your feet and deny it, and say, I was in Des Moines? Oh, they say that he couldn't they wouldn't believe him anyway. Well, how do you know? How do we know that they wouldn't believe him? Is there any evidence in this case that he has ever said anything to anybody denying his crime? Are you going to accept the alibi of pool-hall hangers-on and friends of Johnson and his relations, when the man himself has never denied it under oath that he committed this crime? Certainly you are entitled to know what he has to say, and remember that the burden of proof of alibi rests on the defense, and they have to meet that burden."

8. In the defense's exceptions to the court's instructions and motion for a new trial, it was asserted among other things,
   "Defendant excepts to Instruction XVI for the reason that the same does not correctly state the law with reference to the defense of alibi, and the manner and form in which the same was prepared by inference sets out the feeling of the drawer of the instruction (perhaps unconsciously so) that the evidence of alibi in this case was rather thin and entitled to little weight,—this because of the Court's wording, 'and you are also instructed that you scan the proof of alibi with care and caution, and all of the evidence upon this point both for and against this claim of alibi, should be scrutinized with care and carefully considered by the jury.'"

220, 89 S.Ct. 1068, the suggestion is made that the real question is whether the case is one in which a court's refusal to act would be appropriate. In view of the implications of *Kaufman* we must reject any suggestion of waiver. See also Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938); Fay v. Noia, supra, 372 U.S. at 439, 83 S.Ct. 822, 9 L.Ed.2d 837; Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966).

4. As pointed out in *Stump*, 398 F.2d at 122, our holding there that an oppressive shifting of the burden of proof to the defendant violates due process is not a new constitutional doctrine. Thus we were not "directly faced with issues of retroactivity." The dissent in *Stump* seems to suggest that the question of retroactivity is in the case. 398 F.2d at 126. This was definitely so stated in the panel's decision in Johnson's case. 386 F.2d at 682–683. We adhere, however, to the majority view in *Stump* that we are not faced in Johnson's case with an issue of retroactivity. Even if we were, it would perhaps suffice only to note that Johnson's case, with its alibi instruction issue, reached us before Stump's.

5. The integrity of Johnson's trial and conviction remains seriously clouded by the allegations, seemingly not now controverted, of a sheriff's erroneous, if not false, report and return as to the whereabouts and unavailability of an actually available but imprisoned defense witness, and of the state's use of handwriting evidence now conceded questionable even by the state's own present expert.

6. The Supreme Court of Iowa, by its holding in State v. Galloway, supra, although made under the press of our decision in *Stump* and, more heavily, of the Supreme Court's remand in Johnson's case, has now ruled that the use of the Iowa alibi instruction "can no longer be approved" and requires, on direct appeal, a reversal of the conviction. Thus the Iowa law is not now what it was said to be at the time of Johnson's direct appeal.

The State of Iowa, of course, as with Stump, is entitled to a reasonable time to retry Johnson for the crime with which he has been charged. We realize that in Johnson's case, with the passage of 35 years, more so than in Stump's, there is little likelihood of the state's ability to retry. Witnesses probably are gone and memory undoubtedly has dimmed. To the extent the time factor has dampened the state's ability to retry it also serves to increase the injustice done to Johnson if, by chance, he is innocent of the crime of which he was accused.

This is not an easy case for a federal court. We entertain a natural reluctance to interfere with the standards and the judicial processes of a sovereign state. Federal constitutional rights, however, are precious rights and, even at a late date, their observation and enforcement are demanded.[9] An ordered society deserves no less.

If retrial of Johnson is not under way in an appropriate state court within 6 months from the date of issuance of our mandate, the district court is to grant Johnson's petition for a writ of habeas corpus. Of course, we expect the prosecution, if, for any reason, it concludes not to retry Johnson, promptly (and, hopefully, within 30 days of the issuance of our mandate) to advise the federal district court and the penitentiary authorities of that decision so that Johnson's release forthwith may then be effected without waiting for the stated 6-month period to expire.

The district court's decision is vacated and the case is remanded for further

---

9. Courts have not hesitated to order a new trial merely because the constitutional deprivation occurred at a trial many years earlier. See, for example, Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961) (25 years); Fay v. Noia, supra, (20 years); United States ex rel. Craig v. Myers, 329 F.2d 856 (3 Cir. 1964) (32 years).

proceedings in conformity with this opinion.

LAY, Circuit Judge (concurring opinion).

I concur in the majority opinion. However, I would reject the waiver issue for a different reason than stated.

A federal court cannot demand a more stringent compliance with state procedures than the state itself has required. The Supreme Court of Iowa has never held that Johnson has waived his right to raise the constitutional infirmity of the Iowa alibi rule. When the state has not held that a defendant has legally waived his procedural rights to raise a constitutional question, it is incumbent upon a federal court to pass directly on the merits of the constitutional question. See Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 297 n. 3, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Anders v. Turner, 379 F.2d 46 (4 Cir. 1967). The merits of the other issues have been decided by this court in Stump v. Bennett, 398 F.2d 111 (8 Cir. 1968).

MATTHES, Circuit Judge, with whom Chief Judge VAN OOSTER-HOUT and Judge MEHAFFY join, concurring in the result.

For reasons stated in the dissents in Stump v. Bennett, 398 F.2d 111 (1968), I adhere to the view that the Iowa alibi instruction was not subject to any vital constitutional infirmities and did not deprive Stump of due process. However, I consider myself bound by the decision of the majority in Stump.

Although I believe, for reasons stated below, that the new concept promulgated in Stump should be applied to Johnson, I disagree with the majority's approach to and disposition of the retroactivity issue.

The majority in Stump rationalized that the instruction "in its procedural application was arbitrary and oppressive to the defendant's basic constitutional rights," 398 F.2d at 122, and that the court was not directly faced with "issues of retroactivity" because "an oppressive shifting of the burden of proof to a criminal defendant violates due process [and] is not a new doctrine within constitutional law." Id.

Although the constitutional guaranty forming the premise for Judge Lay's opinion in Stump is as old as the Constitution itself, the decision that the Iowa alibi instruction had the effect of oppressively shifting the burden of proof to the defendant in derogation of his constitutional rights had its genesis in Stump.

Precedent supports Stump in holding that "retroactivity" was not an issue in that case, even though Stump was before the court on habeas corpus rather than direct appeal and even though his trial had been held 7 years before. See, e. g., cases cited in Linkletter v. Walker, 381 U.S. 618, 628-629 n. 13, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). When a court decides that previously sanctioned practices are unconstitutional, it does so in the context of a "case or controversy" and must be able to offer concrete relief rather than an advisory opinion. Desist v. United States, 394 U.S. 244, 254-255 n. 24, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 301, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Mishkin, The Supreme Court 1964 Term, 79 Harv.L.Rev. 56, 60-61 (1965). Thus, the new rule must receive retrospective application in the initial case (here Stump) promulgating it; however, it does not follow that it cannot be given prospective effect in all other cases. Desist v. United States, supra 394 U.S. at 254-255, n. 24, 89 S.Ct. 1030; Stovall v. Denno, supra 388 U.S. at 301, 87 S.Ct. 1967. This has been recognized doctrine since Linkletter v. Walker, supra 381 U.S. at 629, 85 S.Ct. at 1737, "that the Constitution neither prohibits nor requires restrospective effect." Although this view has received severe criticism, e. g., dissent of Justice Black in Linkletter, supra at 640, 85 S.Ct. 1731, and dissent of Justice Douglas in Desist, supra 394 U.S. at 255-256, 89 S.Ct. 1030, it has also been approved by those critical of the method by which

the Court makes its determination of retroactivity, dissent of Justice Harlan in *Desist, supra* at 263, 89 S.Ct. 1030 and *Mishkin, supra* at 87.

Turning now to the majority opinion in this case, I believe the issue of retroactivity—that is, whether Johnson should receive the benefit of the holding in *Stump*—should be determined by application of the criteria enunciated in decisions of the Supreme Court, *e. g.,* Desist v. United States, *supra* at 249, 89 S.Ct. 1030; Stovall v. Denno, *supra,* 388 U.S. at 297, 87 S.Ct. 1967; Tehan v. United States ex rel. Shott, 382 U.S. 406, 410, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, *supra,* 381 U.S. at 629, 85 S.Ct. 1731, and not on the premise relied upon by the *Stump* majority in fashioning the new concept.

That the majority has placed this case at this time in the same posture as *Stump* when it was decided and has failed to recognize the distinguishing factors between *Stump* and this case as to retroactivity is implicit from the following:

> "4. As pointed out in *Stump,* 398 F.2d at 122, our holding there that an oppressive shifting of the burden of proof to the defendant violates due process is not a new constitutional doctrine. Thus we were not 'directly faced with issues of retroactivity.' * * * We adhere, however, to the majority view in *Stump* that we are not faced in Johnson's case with an issue of retroactivity. Even if we were, it would perhaps suffice only to note that Johnson's case, with its alibi instruction issue, reached us before Stump's."

The foregoing leads me to conclude that we are today deciding that every conviction in a trial in which the alibi instruction was given is infected with fatal error.

I do not think it is necessary to go that far in this case. We have here the simple question of whether Johnson's conviction must be set aside, not because of the long-standing constitutional prohibition against shifting the burden of proof to the defendant, but because of the new rule promulgated in *Stump.* In my view the majority should confine its opinion to that issue, and should not by clear implication open the doors to every Iowa prisoner whose case involved the alibi instruction.

I feel that a decision on the retroactivity of *Stump* should be withheld until we have a case squarely presenting that issue. It may be that *Stump* should be applied only to cases tried in the Iowa courts after our decision in *Stump* became final.

However, because of the history of this case in this court, I agree that the *Stump* rule should govern in this instance. Johnson's appeal was docketed here on February 14, 1967, and our decision was filed on November 28, 1967. Stump's appeal reached us on July 3, 1967. The panel which heard the case disagreed with our decision in *Johnson,* and *Stump* was transferred to the court en banc. The result of that hearing appears from the majority opinion. The Supreme Court granted certiorari in *Johnson,* and later vacated our prior decision and remanded for further consideration in light of our opinion in *Stump.*

Considering that Johnson was the first to challenge the alibi instruction in this court, and that our first decision never became final, I believe that fairness dictates that the rule of *Stump* be applied here.

In summary, I concur only in the result.